## Dempsey, Appellant, et al. *v.* First National Bank of Scranton.

Argued January 7, 1948. Before Maxey, C. J., Drew, Linn, Stern, Stearne and Jones, JJ.

*Milton J. Kolansky,* with him *Joseph P. Murphy,* for appellant.

*Frank J. McDonnell,* with him *Edward J. Kelly,* for appellee.

OPINION BY MR. JUSTICE DREW, March 22, 1948:

This action for a writ of alternative mandamus was brought by appellant, James J. Dempsey, Jr., against First National Bank of Scranton to have certain United States Treasury checks, totalling approximately $36,000, delivered to him. The bank, having disclaimed any title to the checks, interpleaded appellee, G. J. Berlinghof, surviving executor of the Estate of Ella E., or Ellen E., McCarty, Deceased. The case has been tried twice. The first trial resulted in a jury's verdict in favor of Dempsey. The learned court below refused to enter judgment n.o.v. in favor of the executors of Miss McCarty's estate, but did, however, order a new trial, which action this Court, on appeal, sustained (353 Pa. 473, 46 A. 2d 160). The second trial resulted in a verdict in favor of the surviving executor of the Estate of Miss McCarty. Following the discharge of motions for a new trial and for judgment n.o.v., and the entry of judgment on the verdict, the present appeal was taken by Dempsey.

On February 27, 1942, Miss McCarty, a woman about eighty years of age, was the owner of a savings account of $40,633.56 in Third National Bank and Trust Company. On that day she went to the bank and instructed it to transfer these funds to a joint account in the names of "Ellen E. McCarty or Mary G. Dempsey, or James J. Dempsey, Jr." Mary G. Dempsey and appellant, James J. Dempsey, Jr., are brother and sister, but are in no way related to Miss McCarty. They were close friends. Miss McCarty lived in the Dempsey home for long periods of time. She frequently entrusted her personal business affairs to appellant. At the time this joint account was opened, she, Mary G. Dempsey and appel-

lant, executed a signature card,[1] and the bank issued the usual passbook. Shortly thereafter Miss McCarty entered St. Joseph's Hospital in Carbondale as a patient, and remained there until she died about a year later on March 16, 1943.

On November 17, 1942, January 4 and January 9, 1943, Dempsey, on orders signed by himself alone, withdrew from the joint account $36,000, and with this money purchased United States government bonds in his name or that of his sister, Mary G. Dempsey. The testimony shows that Miss McCarty learned of these withdrawals a short time after they were made, when her counsel, in the preparation of her income tax return, went to the bank to ascertain the amount of interest which had been credited to the account. As a result she immediately on or about January 25, 1943, sent for Dempsey and demanded an explanation and that he turn over to her the joint account passbook and the bonds. Sister Mary Gilbert, a nurse in the hospital, testifying for the estate, said that Dempsey at that time was asked by Miss McCarty why he had taken her money out of the bank and bought bonds in his own name with it, and that he replied: "Here is your bonds; here is your bank books . . . and your bonds. I didn't take the money. I just bought bonds for you . . . You'll get more interest on them. And the government was going to confiscate all over five thousand dollars, and I wanted to save the money for you."

Appellant denied that any such conversation took place. He said Miss McCarty knew when he bought the bonds and that they had been in her possession on several occasions before he took them back to her the last time.

---

[1] On the face of this card, above the signatures of the three parties, is printed, inter alia, the following: "We hereby promise and agree to and with Third National Bank and Trust Company of Scranton, Pa., and to and with each other, that in the event of. the death of either of us, any balance in this account shall belong to the survivor and may be paid by said bank to said survivor."

It was not denied that Miss McCarty, a short time after appellant delivered the bonds and passbook to her at the hospital in January, 1943, closed the joint account, and opened a new account in her name alone. She turned over the bonds, none of which had been endorsed by Dempsey, to her attorney, with instructions that he deliver them to First National Bank of Scranton for safekeeping. This was done.

It further appeared that on or about March 6, 1943, when threatened by a bill in equity for an accounting, Dempsey, with his counsel, went to the bank, and there endorsed the bonds in question. At that time he also signed a letter directing the bank to redeem the bonds, and agreeing that he would endorse the checks when received by the bank from such redemption and that the bank should deposit those funds to the credit of Miss McCarty. He admitted that he signed this letter in pursuance to the request of Miss McCarty. Shortly thereafter and before this agreement could be fully completed, Miss McCarty died; two weeks after her death Dempsey wrote a letter to the bank, seeking to revoke his prior directions and demanding that the checks received from the redemption of the bonds be turned over to him or his attorney. This the bank refused to do, and he instituted this action. Mary G. Dempsey is not a party to this proceeding, and has made no claim to the checks in suit.

It is well settled that a clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos: *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1. In *Glessner v. Security-Peoples Tr. Co.,* 156 Pa. Superior Ct. 56, 61, 39 A. 2d 165, it was said: "It is familiar law that to constitute a valid gift inter vivos the evidence must clearly show an intention to make the gift and a delivery, actual or construction, of a nature sufficient not only to divest the donor of all dominion over the property but also to invest the donee with complete control of the subject matter of the gift."

The mere offering of the signature card by appellant, while prima facie evidence of a gift, did not so conclusively establish donative intent as to preclude the introduction of any other admissible testimony which would show that no gift actually was intended at the time the card was executed. The evidence introduced by the estate was sufficiently clear, precise and unequivocal to rebut the appellant's prima facie case. That evidence, if believed, clearly showed that Miss McCarty opened the joint account, not to make a gift of her funds to appellant and his sister, but rather to facilitate the transaction of her own business affairs and at the same time to retain full ownership of the fund. It also was ample to warrant the jury in finding that even though it believed that a gift was originally made to appellant, he subsequently intended to and in fact did make a return gift to Miss McCarty of the bonds purchased by him with the funds in question. Under the circumstances, we are certain that the learned court below properly refused to enter judgment n.o.v.

The learned court below committed no error in refusing to grant a new trial. Appellant complains because the court held that the onus of proving that he was entitled to the checks in controversy was on him. This burden obviously was his. However, when he proved the signature of Miss McCarty and offered in evidence the signature card, he made out a prima facie case. Then it was the duty of the estate to come forward with evidence. This it did by the introduction of testimony, which, if true, showed that she never intended to make a present of all or any part of the money in this account to Dempsey or his sister. The case was then one of fact and for the jury. In this connection, it was said by this Court, in *Zonner v. Goetz (Travelers Ind. Co.),* 324 Pa. 432, 435, 188 A. 124: "When plaintiff proved that the liability had been incurred by defendant, in the form of a judgment entered against him, and that this was a liability explicitly insured against by appellant's issu-

ance of a policy then in force, he did make out a prima facie case which entitled him to have the issues submitted to the jury . . . When a defendant seeks to avail himself of a substantive defense reserved in a policy of insurance, when he relies upon a fact specifically mentioned in a policy as relieving him of a liability generally assumed in the policy, the defense becomes an affirmative one and the defendant at that point must shoulder the duty of coming forward with evidence in support of what he affirms. . . . A defendant's duty of coming forward with evidence at certain stages of a trial is sometimes loosely referred to as 'burden of proof.' The 'burden of proof' rests throughout the trial on the party affirming facts in support of his case against a defendant, while 'the burden of coming forward with evidence' may shift from side to side during the progress of a trial."

Appellant also argues that the court below erred in refusing to admit into evidence certain colloquy at sidebar between counsel at the previous trial of this case. We find no merit in this argument. The colloquy in question consisted of statements claimed by appellant as an admission on the part of counsel for the estate that Miss McCarty was competent on February 27, 1942, when she opened the account, and that her intention was to open the account in the manner and form in which she did. A careful reading of the statements in question shows, as found by the court below, that "No one could tell just what was admitted." Furthermore, the fact that Miss McCarty was competent at the time and did intend to open the account was not in issue. Her competency was never questioned.

It is the further contention of appellant that it was error to admit in evidence the bill of complaint demanding an accounting, which was prepared at Miss McCarty's direction and signed by her, but never filed. There is nothing in this contention. The learned court below properly said: "This bill was admitted only for the sole purpose of showing that there was a bill in

equity intended to be filed which was settled by Dempsey giving instructions to the bank to have the bonds redeemed. No part of the bill in equity was read to the jury. It would have been error to have it read. It was sent out with the jury by the express request of counsel for Dempsey with the agreement of counsel for the estate. Without such request the jury would have only seen a paper and would have no knowledge of any statement in it."

We have examined the assignments of error and found no merit in them. The verdict is supported by the law and facts and circumstances of the case. There was no breach of discretion in refusing a new trial and the case could not have been kept from the jury because of the conflicting factual situation.

Judgment affirmed.