## Balfour v. Seitz

*Marshall, Marshall & McNamee*, for administrator.

*Michael M. Mamula* and *Leonard I. Feldstein*, for defendant.

SHUMAKER, P. J., May 9, 1956.—This matter is before the court on petition for declaratory judgment. From the testimony taken at a hearing held in this matter on March 29, 1956, and after careful consideration of the briefs filed by counsel, the court makes the following findings of fact, conclusions of law and decree.

## Findings of Fact

1. John L. Balfour, a resident of Adams Township, Butler County, died intestate on August 12, 1955, and letters of administration in his estate were issued to Edward D. Balfour by the Register of Wills of Butler County on August 26, 1955.

2. John L. Balfour left to survive him as his heirs at law nine children and one grandchild, his wife having predeceased him, the names of said heirs being fully set forth in the petition, and by reference are incorporated herein.

3. Sometime in 1932, John L. Balfour opened a savings account in the Mars National Bank at Mars, the same bearing no. 70, and a deposit book was issued to him showing the first deposit in said savings account to have been made on December 1, 1932, in the amount of $66.30. Thereafter, the book shows a series of deposits, the entry of accumulated interest and a number of withdrawals.

4. Letitia Seitz, defendant in this case, was the daughter of John L. Balfour. Sometime between 1950 and September 26, 1952, the name of Letitia Seitz was written on the John L. Balfour savings account book no. 70 by Eugene Kocher at the Mars National Bank, being an employe of said banking institution, so that the names on the outside cover of the passbook

now read: "Letitia Seitz or John L. Balfour." And on the caption of the account on the inside of said book, the names appear: "John L. Balfour or Letitia Seitz."

5. Neither John L. Balfour or Letitia Seitz executed any writing or agreement between themselves or with the bank concerning this account, nor did either sign what is known as a signature card, the same not being required of them by said depository, it then not being the policy or practice of said bank to require and place on file the signatures of depositors in savings accounts.

6. On Sepetmber 26, 1952, there was deposited in said account the sum of $1,660, and both John L. Balfour and Letitia Seitz were present at the time the deposit was made; and thereafter, until February 5, 1954, there were deposits and withdrawals shown on said account.

7. At the time of the death of John L. Balfour there was a balance in said account of $1,918.46, plus interest which had accumulated.

8. When the name of Letitia Seitz was added to the John L. Balfour savings account by the bank clerk, Eugene Kocher, both John L. Balfour and Letitia Seitz were present: Record page 14.

9. At the time the name of Letitia Seitz was added to the John L. Balfour savings account, the bank clerk was asked, "what would happen to this money in the event one or the other of these persons died," and he told them that the money would go to the survivor whose name appeared on the book, and when this explanation was made, both customers were satisfied: Record page 16.

10. There is no evidence that Letitia Seitz ever deposited any of her own funds in said account.

### Discussion

In the settlement of the John L. Balfour estate, the administrator, Edward D. Balfour, has claimed all

of the above bank account as an asset of the estate and included the same in the inventory and appraisement filed, showing the asset valued at $1,918.46. Defendant, Letitia Seitz, refused to relinquish her claim to the account, and the Balfour estate then filed a petition for declaratory judgment, now before the court.

The question presented to the court is whether the facts above found have created a joint tenancy with the right of survivorship as to said savings account, thereby vesting the ownership of the whole of said account in defendant by the death of her father, or was the account of John L. Balfour in the Mars National Bank not affected in any way by the adding of the name of Letitia Seitz to said account?

Although not argued by opposing counsel, each claiming all of the account, the third possibility is: Would the change of name result in the creation of a tenancy in common as to said account, which, with the presumption of equal interest, would now vest an undivided one half interest in the estate, and the remaining one half interest in defendant?

The basic question involved would appear to be whether John L. Balfour made a gift inter vivos of said savings account to his daughter, Letitia, giving her the right of withdrawal of the funds in said account during his lifetime, together with the incidents of survivorship upon his death.

It is the opinion of this court that a joint tenancy with the right of survivorship was created in the account involved in this dispute by a gift inter vivos by John L. Balfour during his lifetime, and upon his death, the balance of the funds in said account vested in defendant, Letitia Seitz.

The Banking Code of May 15, 1933, P. L. 624, art. IX, sec. 903, as amended by the Act of June 28, 1947, P. L. 994, sec. 1, 7 PS §819-903 provides:

"Whenever a deposit shall be made in an institution in the names of two or more persons, the institution shall not pay out such deposit, any part thereof, or interest thereon, except upon the proper check, order, or receipt, as the case may be, of both or all of such persons, unless at the time of making the deposit a different arrangement shall have been specifically provided for, or unless at a subsequent time all the parties agree to a different arangement or unless the parties were a husband and his wife and one of them is dead."

Nothing in this act requires that such arrangement or understanding be in writing, and in the case at bar, while we are not aided by a written agreement, the absence thereof is not a controlling factor.

The controlling element in this type of situation is the intent of the donor. In Dempsey v. First National Bank of Scranton, 359 Pa. 177 (1948), the court held:

"It is well settled that a clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos: Lochinger v. Hanlon, 348 Pa. 29, 33 A. 2d 1."

In that case the court further held that the mere offering of a signature card was prima facie evidence of a gift, although it did not preclude the introduction of any other admissible testimony which would show that no gift was actually intended at the time the card was executed.

In Grady v. Sheehan, 256 Pa. 377, the court held: "It may be conceded that the full control which one has over his personal property includes the right to create such a joint ownership and survivorship either for a consideration or by gift".

Mardis v. Steen, 293 Pa. 13, 18 (1928), involved the case where a man had funds deposited in a bank in his name and that of a woman, under an agreement under seal that the sum deposited shall be deemed to

belong to the parties as joint tenants, and not as tenants in common, and that the bank shall deal with the survivor as sole and absolute owner thereof. The court held that this was a completed gift to the woman and that she was entitled to the fund if she survived the donor, the court stating:

". . . the language used in the memorandum accompanying the deposit expresses with sufficient clarity the intention to create a joint tenancy with right of survivorship."

In Fell Estate, 369 Pa. 597 (1952), Joseph Fell opened a savings account in a bank and later, while making a deposit in said account, had the title in the passbook changed to the names of Joseph Fell or Mary E. Sullivan. He obtained at the same time from the bank teller a so-called signature card which declared that the parties were joint owners with the right of survivorship and both of the parties signed and returned the card to the bank. The court held:

". . . the burden in a situation of this kind is upon the administrator to show, by evidence, which is clear, precise and indubitable, that the contract is not what it plainly says it is. . . .

"On the other hand, a burden rested upon the claimant to demonstrate that she was the beneficiary of a legitimate gift inter vivos. And the proof of that gift must be clear and satisfactory. . . . But she met that burden successfully by proof of the signature card signed by her and her joint tenant."

The court further held: "Where the depositor and someone else execute an agreement that the bank account shall belong to both of them as joint tenants, subject to the check of either of them, and in the case of death of one, the bank shall deal with the survivor as sole and absolute owner, the agreement is prima facie evidence of a gift inter vivos by the depositor to the

other and of the creation of a joint tenancy with the right of survivorship. (Citing cases.)"

Quoting further from said case: "The fact that all the moneys were contributed to the account by the decedent does not negative an intent to make a gift. Where one contributes the entire sum to a joint account the rights of each joint tenant are the same. (Citing cases.)"

Where there are two joint tenants of a bank account, what one tenant acquires on the death of the other is the right to immediate possession, ownership and enjoyment of the entire fund: Cochrane's Estate, 342 Pa. 108, 20 A. 2d 305.

Counsel for the estate argues that where the appellate courts have held that there existed a joint tenancy with the right of survivorship in situations similar to the one now under consideration, the cases were so decided because there was in existence a written contract or a signed signature card. While there is the absence of the signature card in the case at bar, the failure to sign the same or execute a written agreement was due to the policy of the bank or depository involved which did not require the same for savings accounts, it being explained that the bank was located in a small rural community where all of the depositors were personally known to the bank personnel.

In lieu of the signature card or agreement in this case, we have the inquiry of the bank clerk or teller concerning the account and the explanation of the teller as to the effect of adding the name of Letitia Seitz to the account book. After he had explained that the account so labeled would carry with it the incidents of survivorship, the parties were satisfied and the change was made. This constituted an oral agreement and in the opinion of this court was prima facie evidence that a gift inter vivos had been made and completed.

Letitia Seitz was an incompetent witness by virtue of the so-called "Dead Man's Rule", John L. Balfour being deceased and unable to testify concerning said agreement. However, a prima facie case having been made out by the bank clerk or teller for the beneficiary or donee of the account, the Balfour estate did not offer any evidence which would show in any way that the donor's intention was not to create a joint tenancy with survivorship.

Since the fund involved is not large, it is indeed regrettable that the parties could not have settled this matter amicably without this judicial ruling since it is an interfamily dispute.

### Conclusions of Law

1. John L. Balfour made a gift inter vivos of a savings account in the Mars National Bank of Mars, said account being no. 70, to Letitia Seitz, his daughter.

2. John L. Balfour created a joint tenancy with the right of survivorship as to said savings account no. 70 in said Mars National Bank with Letitia Seitz, his daughter.

3. On the death of John L. Balfour on August 12, 1955, title to the balance of the funds in said account became the absolute property of Letitia Seitz by reason of the incident of survivorship created.

4. The balance in savings account no. 70 in the Mars National Bank is not now an asset of the John L. Balfour estate.

### Decree

And now, May 7, 1956, it is ordered, adjudged and decreed that the balance in savings account no. 70 in the Mars National Bank is not the property or asset of the John L. Balfour estate, but is the property of Letitia Seitz and now subject to her withdrawal.

Eo die, exception noted and bill sealed.