King Estate.

Argued September 28, 1956. Before Stern, C. J., Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

120

*David E. Cohen,* with him *Joseph W. Ray, Jr., I. Burdette Coldren,* and *Ray, Coldren & Buck,* for appellant.

*Wade K. Newell,* for appellee.

OPINION BY MR. JUSTICE BELL, November 12, 1956:

Harry C. King died August 11, 1954, at the age of 64 years. He left surviving him a widow, Ruby T. King, whom he married on June 14, 1951, a married sister, Blanche King Craig, and another sister, Helen Elizabeth King. King, in his last Will which was dated August 10, 1951, gave $100. to his sister, Mrs. Craig; he gave his sister, Helen King, his undivided one-half interest in their residence situate at 22 Barton Mill Road, Fayette County, Pa.; and he gave the residue of his estate, one-half to his wife, Ruby King, and the other half to his sister, Helen King. King and his wife were very happily married; he was also very fond of his sister Helen with whom he had lived prior to his marriage.

King left an estate of $56,434., exclusive of the contents of a safe deposit box which contained stocks and securities having an approximate value of $50,000. The question involved is the ownership (a) of the stocks

and bonds contained in the safe deposit box, and (b) of the furniture in an apartment which was occupied by him and his wife.

On *January 17, 1953,* decedent purchased a Packard automobile which he had registered in their *joint* names. On *January 27, 1953,* he transferred and conveyed by duly recorded deed his mountain home containing 3¾ acres, to himself and his wife *as tenants by the entireties.*

King owned a safe deposit box located in the Second National Bank of Uniontown (now the Gallatin National Bank) which he had rented in his name since 1948. On *February 17, 1953,* King came to the bank and requested the custodian of the safe deposit vault, Amana Hess, to change his safe deposit contract from his name to that of himself and his wife. The custodian explained to King that he could retain his present contract for his safe deposit box and give a right of access to his wife, or he could have the contract changed to a joint contract for himself and his wife. With full knowledge of the difference between mere access and joint ownership, *King said he did not want his wife merely to have access; he wanted a joint contract.* The custodian produced the contract and explained it again to him in detail. He signed it in her presence; she witnessed it, and he then took it home to obtain his wife's signature. Two days later, *February 19th,* he brought back the contract with his wife's signature on it and delivered it to the Bank, where it remained until the time of trial. The relevant part of the contract, which was dated *February 19, 1953,* reads as follows:

"10. . . . J.C. In case the Lessees are joint tenants, including husband and wife, it is hereby declared that all property of every kind at any time heretofore or

hereafter placed in said box *is the joint property of both Lessees and, upon the death of either, passes to the survivor*[*] subject to inheritance tax laws. Each of the Lessees shall have a full access to and the control of the contents of said box without further authority. The Lessor shall not be liable, in the event that property belonging to the joint tenants having access to said box be misappropriated by one or more of those having access. *Each or all of the Lessees may appoint a deputy* to have access to or surrender the box. . . .

"13. Lessees hereby acknowledge the receipt of two keys to said box and space."

To constitute a valid gift inter vivos of the contents of a safe deposit box, two essential elements are requisite: An intention to make an immediate gift, and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein. The burden of proof is upon the claimant to prove the gift by clear and convincing evidence: *Tomayko v. Carson,* 368 Pa. 379, 83 A. 2d 907. Where an owner of a safe deposit box and his donee execute a contract or lease which recites that the property therein is the joint property of the lessees, with right of survivorship, and that the lessees acknowledge the receipt of two keys to said box—this creates a prima facie case of a valid inter vivos gift of a joint interest (with right of survivorship) in said property. The majority view appears to be that parol evidence is admissible (a) to prove an intention, or lack of intention, to make a gift as well as (b) delivery or failure

---

[*] Italics throughout, ours.

of delivery, because the instrument is considered to be incomplete or (sometimes) equivocal. Cf. *Furjanick Estate,** 375 Pa. 484, 100 A. 2d 85. However, it is established that the parol evidence which is necessary to disprove such gift must be clear, precise and indubitable. Cf. *Furjanick Estate,* 375 Pa., supra; *Fell Estate,* 369 Pa., supra; *Mader v. Stemler,* 319 Pa., supra; *Dempsey v. National Bank of Scranton,* 359 Pa., supra.

In the light of these principles we shall analyze the facts.

The decedent-owner and his wife executed a contract or lease which, we repeat, clearly and specifically "declared that all property . . . in said box *is the joint property of both Lessees* and, upon the death of either, passes to the survivor . . . Each . . . of the Lessees may appoint a deputy to have access to or surrender the box . . . Lessees hereby acknowledge the receipt of two keys to said box." What the appellees overlook is the

---

* In *Furjanick Estate,* 375 Pa. 484, 485-490, 100 A. 2d 85, where an elderly man (93 years old) transferred a savings account and a checking account which he had had in his own name to the joint name of himself and his niece with right of survivorship, the Court said (pp. 489-490) : "When a depositor creates a joint savings or checking (bank) account with right of survivorship, and a signature card so stating is executed by both parties, these facts are prima facie evidence of a gift inter vivos by the depositor to the other, and of the creation of a joint tenancy with right of survivorship: Fell Estate, 369 Pa. 597, 87 A. 2d 310; Lochinger v. Hanlon, 348 Pa. 29, 33 A. 2d 1; Mader et al. v. Stemler et al., 319 Pa. 374, 179 A. 719. A deposit accompanied by such a writing, *but nothing more,* is considered so incomplete or equivocal as to permit the admissibility of parol evidence: Fell Estate, 369 Pa., supra; but such evidence in order to prevail must be clear, precise and indubitable: Fell Estate, 369 Pa., supra; Dempsey v. National Bank of Scranton, 359 Pa. 177, 181, 58 A. 2d 14; Mader et al. v. Stemler et al., 319 Pa. 374, 379, 179 A. 719."

important fact which is decisive in this case, viz., such a contract creates a prima facie valid inter vivos gift of a joint interest (with right of survivorship) in all the property in said box, and the burden of proof shifts to the parties contesting the gift to prove a want of intention or a failure of delivery. This burden they have failed to sustain.

The evidence with respect to the box and the key supports, instead of disproves, a completed gift to the wife. That evidence showed that on June 24th and August 14th, 1953, King alone, and on July 23, 1954, King and his wife, and on August 12th and October 14th, 1954, his wife, exercised their respective right of access to the box. King had had two keys to the box prior to the contract of February 19, 1953. Obviously, Mrs. King could not have gotten into the box without a key. While there was no eye-witness evidence of the delivery of one of the two keys—because the lower Court correctly sustained an objection to an offer of proof by the wife, who, having an adverse interest, was incompetent—the record contains the following evidence of delivery to Mrs. King of the key to the safe deposit box:

1. Mr. I. Burdette Coldren, a practicing attorney in Fayette County, who represented the estate, testified that after Mr. King's death Mrs. King came to his office and showed him a key ring or key chain containing a number of keys. She took off the key ring and gave to him for safekeeping a key to the safe deposit box No. 1060 which she and her husband had jointly rented under the aforesaid contract or lease dated February 19, 1953. He also testified that she turned over to him a handkerchief containing some keys, papers and other objects belonging to the estate, and *among the keys was Mr. King's key to the safe de-*

*posit box.* Mr. Arlington Coldren, who is a brother-in-law of Ruby King, had a safe deposit box at the Second National Bank. He testified that he took Mrs. King down to the offices of the attorneys, Ray, Coldren and Buck; that she had several packages of papers; that she told him she was going to the bank whereupon he asked her whether she had a key to the safe deposit box to which she answered "Yes" and showed him the key on a key chain. This occurred the day after Mr. King's death. Ruth Coldren, a sister of Mrs. King, testified that when preparing for a birthday party about March 23, 1953, her sister showed her the key to the safe deposit box which she had on a key chain along with other keys. Helen Earwood, a friend of Mrs. King, testified that she had a birthday party with the Kings about March 25, 1953; that there was a conversation about keys; that her husband's keys were rattling and she said that her husband carried more keys than any man in the world. Mr. King took out his large bunch of keys and exhibited them, and then said "Ruby, you have almost as many as I do", and after saying that he had a key to the cottage, one for the box, one for the apartment and that he could name them all, he compared his keys with Ruby's and said that she had a key to the safe deposit box which was on her chain.*

---

* An offer to prove by the testimony of the widow that she had a key to the safe deposit box and when, where and under what circumstances it was given to her by her husband, as well as an offer to prove by the widow that the purpose of her visit to the safe deposit box the day after her husband's death was to obtain his military discharge record which was requested by the undertaker—each of these offers was properly refused by the Court, upon objection by opposing counsel, as the interest of the witness was adverse to the estate.

The lower Court erroneously believing—even after Mrs. King had proved the contract which established a joint ownership of the property in her—that she had the burden of further proving a delivery of a key to her, held that the witnesses' statements concerning the key were too loose and indefinite because they did not give details of when and where the key had been delivered by King to Mrs. King. Such detail was not indispensable, nor do we agree that, taken with all the other evidence in the case, the testimony concerning the key was too loose and indefinite.

The Court below and the appellees rely mainly upon *Chadrow v. Kellman,* 378 Pa. 237, 106 A. 2d 594. That case is clearly distinguishable. In that case the Court* held that there had been no valid inter vivos gift because "It is conceded that decedent alone received and *kept* both keys to the box and that *claimant never had possession of either key and never had access to the box* . . . since claimant never had access to the safe deposit box, the donor did not divest himself of dominion over the property claimed. . . ."

---

\* Chief Justice STERN dissented on the ground that the acknowledgment of the receipt of the keys to the safe deposit box constituted a delivery of them by the bank to the lessees and that consequently all the requisites of a gift inter vivos were complied with.

Justice BELL and Justice MUSMANNO dissented not only for the reason given by Chief Justice STERN, but also for the more important reason that the signature card executed by all the parties constituted a *contract* which by its clear and specific terms, immediately created a present joint ownership of the contents of the box. If this view prevailed, the instant case is a contract case, not a so-called gift case, and must be governed by the principles of contract law. Under such principles no delivery of a key is necessary, and King's executrix has *utterly* failed to upset the written contract which immediately vested in Harry C. King, and his wife, Ruby T. King, the joint ownership of the contents of the safe deposit box with right of survivorship thereto.

In the instant case there was no evidence that the decedent *kept* both keys and that Mrs. King never had possession of a key or access to the box. On the contrary the parol evidence corroborated the written contract and showed that *Mrs. King actually possessed a key to the box and actually used her right of access to the box.* King's executrix not only failed to sustain her burden of proof, but, as above mentioned, the oral evidence supported a completed gift to the donee.

The lower Court also relied upon *Tomayko v. Carson,* 368 Pa., supra. That case is likewise clearly distinguishable. In that case the owner of a safe deposit box and of the securities therein executed with the alleged donee a joint lease of the box. The Court held (a) that *mere joint access* to a safe deposit box is not evidence of a completed gift to the claimant of the contents of the box nor of a joint ownership of the securities found therein, and (b) (the majority held) that the declarations of decedent that a gift had been made were too loose and vague to support such a gift. In the *Tomayko* case it is important to note that there was no contract declaring that the property was owned jointly or jointly with right of survivorship; instead there was, we repeat, merely a joint lease of a safe deposit box.

Another question is here involved, namely, the ownership of the household furniture which was contained in an apartment occupied by Mr. and Mrs. King in a residence owned by decedent and his sister. Where furniture is contained, at the death of a husband, in a house or apartment which was then or formerly owned or rented by him, the ancient presumption still prevails—notwithstanding the doubt expressed in *Fine v. Fine,* 366 Pa. 227, 77 A. 2d 436—that he is the owner of such furniture: *Schwartz Estate,* 166 Pa. Supe-

rior Ct. 459, 71 A. 2d 831; *Chadwick Estate,* 154 Pa. Superior Ct. 157, 35 A. 2d 582; *Matheny Estate,* 164 Pa. Superior Ct. 18, 63 A. 2d 477. A wife can over-come this presumption by evidence that she paid for or inherited the furniture, or acquired it by gift, or that they jointly paid for it, or by any other evidence sufficient to prove ownership. Mrs. King's evidence was insufficient to overcome this presumption.

The decree is affirmed as to the furniture claimed by the wife. The decree is reversed as to the securities which were in the safe deposit box of Harry C. King and Ruby T. King at the time of King's death. Costs shall be paid by the Estate of Harry C. King.

DISSENTING OPINION BY MR. JUSTICE JONES:

Mr. Justice JONES is of the opinion that the claimant's evidence failed to meet the legal requirements of the proof necessary to establish a valid gift *inter vivos.* Compare, e.g., *Tomayko v. Carson,* 368 Pa. 379, 83 A. 2d 907.