Sangl *v*. Sangl, Appellant.

Argued September 29, 1958.   Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*J. Thomas Hoffman,* with him *Thomas P. Nee,* for appellant.

*George S. Goldstein,* with him *George H. Cohen,* for appellee.

OPINION BY MR. JUSTICE BELL, November 25, 1958:

This is an appeal from a decree of the Court of Common Pleas of Allegheny County sitting in equity, which awarded the plaintiff two savings accounts and an insurance policy.

A joint savings account in the amount of $6,803.78 was opened by *Stella* Sangl on May 9, 1955 in Pioneer Savings and Loan Association in the name of herself and Anna Sangl, her sister-in-law, "as joint tenants with right of survivorship and not as tenants in common . . . one signature only required for withdrawal . . . any one of the undersigned who shall first act shall have power to act in all matters related to . . . the savings account . . . whether the other person named hereon be living or not." The signature card was signed by Stella J. Sangl and Anna M. Sangl. The passbook was kept by Anna.

A joint savings account in the amount of $7,445 was opened by *Stella* Sangl on August 5, 1955 in the name of herself and her sister-in-law, Anna, in Friendship Federal Savings and Loan Association "as joint tenants with the right of survivorship and not as tenants in common . . . subject to order of both." The signature card was signed by Stella and Anna P. Sangl.

On June 4, 1953 Stella had opened an account in the Friendship Federal Savings and Loan Association in the names of herself and her brother Peter Sangl, as joint tenants and not as tenants in common, with right of survivorship. The passbook was given to Anna Sangl, Peter's wife, to hold for safekeeping. Peter Sangl became seriously ill in 1955 and Stella thereupon transferred the funds in this account to the present account in the names and under the terms hereinabove mentioned. Anna Sangl retained the passbook for safekeeping.

The money in each account belonged originally to Stella; neither Anna nor Peter ever contributed anything.

Stella Sangl became incompetent, and on April 4, 1956 the Orphans' Court of Allegheny County appointed the Potter Bank & Trust Company guardian of her estate.

On May 16, 1956, the Potter Bank & Trust Company, as Stella's guardian, filed a complaint in equity against Anna Sangl and Peter Sangl to recover the aforesaid bank accounts and an insurance policy on Stella's life which was payable to Peter Sangl.* The complaint alleged that Anna and Peter Sangl had procured control over the accounts and the insurance policy by fraud, undue influence, duress and constraint. Defendants filed an answer denying these averments, claiming the bank accounts as valid inter vivos gifts.

The Chancellor specifically found, and the evidence fully supported him, that there was no fraud or undue influence exerted on Stella by Anna or by Peter. This finding would ordinarily necessitate a judgment for the defendants. However during the course of the

---

* The claim for the insurance policy was added by amendment at the trial.

trial Anna Sangl testified as follows: "Q. Then you say you don't consider a bit of the money in the Friendship Savings & Loan is yours? A. No. Q. Nor do you consider a bit of the money that is in the Pioneer Savings as yours? A. That's Stella Sangl's. Q. That is Stella Sangl's? A. That is Stella Sangl's. . . . Q. What interest do you have? A. I still have an interest in the whole affair in order to see that that girl [Stella] is taken care of. . . . . Q. In other words, you mean that you have an interest in seeing justice done? A. Right; you took the words out of my mouth. Q. Justice towards Stella? A. Right, justice toward that girl."

In view of this testimony by Anna, the joint tenant donee, it is clear, as the Chancellor found, that there never was any intent on Stella's part to make a gift of this money or these bank accounts to Anna.

Defendants raise two questions in this appeal: (1) The question of lack of donative intent was not raised by the pleadings and therefore, because of the variance between the pleadings and the proof, no equitable relief should be granted. It was the defendants' own testimony concerning these savings accounts which raised at the trial the issue of donative intent. Furthermore, no objection was made by defendants to any of this testimony. For this reason defendants cannot successfully claim that they were prejudiced or even surprised by the testimony, and we, therefore, find no merit in this technical contention: *Malone v. Melnick*, 378 Pa. 483, 106 A. 2d 806; *Pennsylvania Railroad Co. v. Pittsburgh*, 335 Pa. 449, 6 A. 2d 907.

In *Malone v. Melnick*, 378 Pa., supra, the Court, speaking through Mr. Justice (now Chief Justice) JONES, said (page 488): "The law is well settled that, in order to take advantage of a variance, objection must be made (1) when testimony not forecast by the

pleadings is offered, assigning the variance as the reason; (2) by a motion for a nonsuit, again assigning the variance as the reason; or (3) by a point for binding instructions in which the reason is likewise assigned. If, however, no objection is made to the testimony, and the alleged variance is not assigned on a motion for nonsuit or in a point for binding instructions, then the complaining litigant, having taken his chance on a favorable verdict, may not thereafter raise the question of variance: Slingluff v. Dennis, 376 Pa. 91, 96-97, 101 A. 2d 755; Pennsylvania Railroad Company v. Pittsburgh, 335 Pa. 449, 457-458, 6 A. 2d 907. The purpose of requiring the raising of an alleged variance at some point during the trial is so as to afford an opportunity for amendment of the pleadings if desired: Kehres v. Stuempfle, 288 Pa. 534, 538-539, 136 A. 794." There is, we repeat, no merit in defendants' first contention.

Defendants' second and main contention is that even if donative intent is an issue, the testimony is not sufficiently clear and precise to support the Chancellor's findings. The applicable law is stated in *Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85, where the Court said (pages 489-490): "When a depositor creates a joint savings or checking (bank) account with right of survivorship, and a signature card so stating is executed by both parties, these facts are *prima facie evidence** of a gift inter vivos by the depositor to the other, and of the creation of a joint tenancy with right of survivorship: Fell Estate, 369 Pa. 597, 87 A. 2d 310; Lochinger v. Hanlon, 348 Pa. 29, 33 A. 2d 1; Mader et al. v. Stemler et al., 319 Pa. 374, 179 A. 719. A deposit accompanied by such a writing, but nothing more, is considered so incomplete or equivocal as to

---

* Italics ours.

permit the admissibility of parol evidence: Fell Estate, 369 Pa., supra; but such evidence in order to prevail must be clear, precise and indubitable: Fell Estate, 369 Pa., supra; Dempsey v. National Bank of Scranton, 359 Pa. 177, 181, 58 A. 2d 14; Mader et al. v. Stemler et al., 319 Pa. 374, 379, 179 A. 719."

There is no doubt that the evidence pertaining to the savings accounts meets the above test. Nothing could be clearer or more indubitable and convincing than the testimony of the recipient of the alleged gifts that no gift was intended, and she had no right or pecuniary interest in the savings accounts.

The evidence with respect to the life insurance policy on Stella Sangl's life was very meager. The policy was not produced. The only testimony came from Anna and Peter Sangl, both of whom testified that he was the beneficiary named in the policy. Peter, whose testimony at a previous trial was read into the record, testified that the policy was in his possession. Anna testified that it was in her possession. Peter testified that the proceeds were to be used to pay Stella's funeral expenses and for masses for the soul of Stella and their mother and father. Anna testified that the proceeds were to be used to pay Stella's funeral bills. The record shows, prima facie, a valid gift to Peter for very worthy purposes, and the evidence presented by Stella's guardian was not legally sufficient to justify a termination, revocation or nullification by the guardian. It follows that the guardian was not entitled to the insurance policy.

The decree as thus modified is affirmed; costs to be paid by the estate.

Mr. Justice BENJAMIN R. JONES dissents as to the joint savings accounts.