## Burke Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*John E. Power, Jr.,* for exceptant.

*Charles F. Nahill,* Special Assistant Attorney General for Commonwealth, contra.

SAYLOR, J., May 6, 1966.—Upon the death of a Catholic priest, who was subject to a vow of poverty and was a party with his brother to a joint savings account and a jointly-held safe deposit box containing cash, was there a tax due on one half of the deposit of $10,388.14, and on one half of the cash of $260? A State inheritance tax of 15 percent was levied thereon in the amount of $784.66.

The surviving joint tenant appealed, and at a hearing testified to the creation of the account, and submitted relevant documents which were admitted in evidence. The hearing judge dismissed the appeal from appraisement, and appellant excepted thereto.

On August 3, 1959, decedent and his brother, Gerard J. Burke, appellant, executed a bank deposit form making them depositors as joint tenants, authorizing the bank to pay unconditionally any sums drawn out by either, and providing that the balance on deposit at the death of one party was to become the absolute property of the survivor as sole owner.

Appellant alone deposited money in the account. At no time did decedent make any deposit whatsoever. During a five-year period, the brothers withdrew small amounts on 27 occasions, equally divided between them.

Decedent was a member of the Society of Jesus, pledged to a life of poverty. His brother gave him, from time to time, small sums with which to entertain and

"pay back friends for being nice to him". It was later decided to open a bank account, from which the priest could withdraw such funds as he needed. The passbook was kept in a safe deposit box opened at the bank in the names of both brothers, and to which each had a key.

When decedent was in hospital, at his request, his brother placed in the box cash which came from "giving retreats and days of recollection during the summer". It was never the property of either brother.

The testimony that the surviving brother considered the deposit his, paid income tax on interest earned by the account, and never had any thought that decedent could or would withdraw from the account more than nominal amounts was admissible. It was not adverse to the estate's interest, and the Dead Man's Rule does not apply: Slifer Estate, 34 D. & C. 2d 391 (1964) ; Goorin's Estate, 26 Beaver 137 (1965) ; McGary Estate, 355 Pa. 232 (1946). It was admissible under many decisions involving joint bank accounts and jointly-held safe deposit boxes: Furjanick Estate, 375 Pa. 484 (1953) ; Hosfeld Estate, 414 Pa. 602 (1964) ; Fenstermaker Estate, 413 Pa. 645 (1964). See also Slavinski Estate, 420 Pa. 504 (1966).

There are numerous orphans' court decisions permitting the introduction of oral evidence to explain the nature of the joint ownership arrangement: King Estate, 15 Fiduc. Rep. 462 (Del. Co., 1965) ; Kivlin's Estate, 13 Fiduc. Rep. 408 (Lack. Co., 1963) ; Matthews Estate, 53 Luz. L. R. 159 (1963) ; Goorin's Estate, 26 Beaver 137 (1965) ; Vought's Estate, 44 Erie 86 (1961) ; Lorillard's Estate, 14 Fiduc. Rep. 639 (Del. Co., 1964) ; Hollinger Estate, 29 D. & C. 2d 602, 13 Fiduc. Rep. 331 (Lanc. Co., 1963) ; and Coppock Estate, 13 Fiduc. Rep. 414 (Del. Co., 1963).

In Cohen Estate, 58 Lanc. 441 (1963), testimony was established to show that a decedent's name was added to the lease of a safe deposit box as a matter of

convenience, and the mere fact that decedent was a co-lessee of the box was insufficient to establish joint ownership of the contents.

While testimony and other evidence may give a true picture of the intention of the parties and change the legal effect of the written document with respect to property rights, in the present case, under the language of the tax act, the money in the joint account is taxable upon the death of either of the brothers. Furthermore, we have recently held that a priest's vow of poverty does not automatically exempt him, or his assignee, from liability for State inheritance tax: Nolan Estate, 37 D. & C. 2d 522, 16 Fiduc. Rep. 38.

Section 241 of the Pennsylvania Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, reads as follows:

"Joint Tenancy—When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons, so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant".

Under this language, without question there is a tax due on the accrual of the right to possession of the "whole property". Until a joint tenant dies, no one party to a joint account has enjoyment of the whole property, because at any time prior to the death, either or any party possesses the right to withdraw the whole amount of the deposit. At the death, and only at the death, of a joint tenant, unless, of course, all parties terminate the deposit agreement, or one of them, in

the lifetime of the other joint tenant or tenants, withdraws the whole fund, does the survivor become possessed of the whole property.

Even under exceptant's statement of the facts, his brother had the right to withdraw limited sums from the account for his personal needs. Regardless of how little was drawn from the account, decedent did have some rights therein, which were extinguished by his death. It is this accrual to the survivor which gave him the right "to the immediate ownership or possession and enjoyment of the whole property", which makes section 241 of the act applicable.

In Commonwealth v. Nolan's Estate, 345 Pa. 98 (1942), the Act of July 14, 1936, P. L. 44, was the taxing act, and there, the court held that under its terms, irrespective of the intentions of the parties at the time of the transaction, the tax was properly levied upon one half of a joint bank account on the death of one of the joint tenants. The Act of 1936 contained language quite similar to that of the Act of 1961. The taxation of the accrual of property rights by survivorship remains exactly the same, whether occasioned by the death of a joint owner occurring before or after the effective date of the Act of 1961.

The Supreme Court said, in Commonwealth v. Nolan's Estate, supra, at page 100:

"That the statute [the Act of 1936] is constitutional and applies irrespective of the amounts contributed by the respective joint tenants is no longer open to question, in view of our recent decision in Cochrane's Estate, 342 Pa. 108. Speaking through the Chief Justice, we there stated (p. 111): 'What is actually acquired by the surviving joint tenant is the right to the immediate ownership, possession and enjoyment of the whole property and it is the accrual of this right which the statute properly taxes . . . Even where one contributes the entire sum to a joint bank account, the

rights of each of the tenants to the joint fund are the same, the one who made the contribution has by that act made an immediate gift to the other' ".

So here, there is due on the death of a joint tenant a tax on one half of the account.

The Commonwealth conceded that no tax was due on the cash which was in the safe deposit box. This money was the property of the church, and neither decedent nor his brother owned or made any claim to it.

The exceptions are dismissed, and the adjudication is confirmed absolutely.