**Grove Estate**

*Fred C. Houston, Jr.*, for petitioner.
*Donald S. Little*, for Commonwealth.

HAY, J., April 25, 1969.—This case comes before this court in the form of a petition and answer and presents a very narrow question. Is the Commonwealth entitled to payment of a transfer inheritance tax on one-half the value of $33,000 in cash found in a safe deposit box rented in the names of petitioner and decedent?

Myrtle A. Grove died on July 26, 1968, at the age of 63. She was survived, inter alia, by her brother, William K. Grove, and her mother, Myrtle M. Grove. On August 29, 1945, a contract of rental for box no. E-304 was entered into with the Grant Building Incorporated. On said contract William K. Grove and Myrtle A. Grove appear as lessees and Myrtle M. Grove's signature appears as a deputy. The particular

portions of the contract which are pertinent herein provide as follows:

"13. Lessees hereby acknowledge the receipt of two keys to said box and space.

"17. It is agreed by and between lessees that all property of every nature at any time heretofore or hereafter replaced in said box, and which shall remain therein immediately preceding the death of either of lessees, is intended and hereby declared to be then owned by lessees as joint tenants, and upon the death of either of the lessees, the said joint property shall pass to the survivor as sole owner; and it is agreed between all the parties hereto that such survivor shall be entitled to full access to said box, and shall be entitled to remove the entire contents thereof. The lessor, however, assumes no responsibility as to the legal effect of this contract upon the ownership of the contents of said box."

An inventory was taken of the contents of the aforementioned box on August 12, 1968, and included therein were 30 sealed envelopes containing cash in the amount of $33,000. The Commonwealth assessed a tax against one-half of the value, or $16,-650, and petitioner requested that a citation issue to the Commonwealth to show cause why the inheritance tax assessment should not be set aside. A hearing was held and William K. Grove, the petitioner herein, was called as a witness. The Commonwealth objected to his testifying on the basis that his testimony would attempt to vary or contradict the terms of the contract, paragraphs 13 and 17 of which are quoted above. This court overruled those objections of the Commonwealth and allowed the petitioner, William K. Grove, to testify.

Petitioner testified that decedent, Myrtle A. Grove, was his sister; that he, his sister and his mother had rented the box at the Grant Building on August 29,

1945, and at that time he received two keys, one of which he put on his key ring and the other in a box at home where he kept his personal effects. He further stated he had never given his sister, Myrtle A. Grove, a key and to the best of his knowledge she never had access to the safe deposit box. He also testified that in 1917 decedent contracted polio when she was about 12 years old, which left her with such a curvature of the spine that she could not get around and had to wear a brace. This condition continued from the time she was 12 until the time she died; she owned no assets; she was supported by her brother and had never been gainfully employed. Mr. Grove stated that he saved money at home, putting it in an envelope and every time he got $1,500 or so he would seal the envelope, put his mark on it and place it in the safe deposit box. On cross-examination by the Commonwealth, Mr. Grove stated that his sister's health would not have permitted her to go to the box unless someone went with her, and that his intention in putting her name on the box was that if he were ill, his sister and his mother could go to the box. He further stated on cross-examination that his sister knew where the key was and that he had told her that the only occasion on which she should take or touch the key was that if he got ill.

His testimony was corroborated by Myrtle M. Nickell, formerly Myrtle M. Grove, the mother of petitioner and decedent, who testified that decedent had had polio; that she was never gainfully employed; that she was unable to care for herself and that the only time that the decedent visited the Grant Building was when she had signed the card and that she rarely came into the city as the trip was too much for her.

The Commonwealth contends that the lease as signed created a valid inter vivos gift of a joint interest with right of survivorship and all the contents of

the box. As our Supreme Court pointed out in King Estate, 387 Pa. 119, 122, 123 (1956), and again reiterated the same in Secary Estate, 407 Pa. 162, 166, 167 (1962):

"To constitute a valid gift inter vivos of the contents of a safe deposit box, two essential elements are requisite: An intention to make an immediate gift, and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein. The burden of proof is upon the claimant to prove the gift by clear and convincing evidence: Tomayko v. Carson, 368 Pa. 379, 83 A. 2d 907. *Where an owner of a safe deposit box and his donee execute a contract or lease which recites that the property therein is the joint property of the lessees, with right of survivorship, and that the lessees acknowledge the receipt of two keys to said box — this creates a prima facie case of a valid inter vivos gift of a joint interest (with right of survivorship) in said property. The majority view appears to be that parol evidence is admissible (a) to prove an intention, or lack of intention, to make a gift as well as (b) delivery or failure of delivery, because the instrument is considered to be incomplete or (sometimes) equivocal. Cf. Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85. However, it is established that the parol evidence which is necessary to disprove such gift must be clear, precise and indubitable. Cf. Furjanick Estate, 375 Pa. supra; Fell Estate, 369 Pa. supra; Mader v. Stemler, 319 Pa. supra; Dempsey v. National Bank of Scranton, 359 Pa. supra." (Italics supplied.)

The so called "Deadman's Act" of May 23, 1887, P. L. 158, 28 PS §322, does not prevent the colessee

from testifying. In Re Cohen's Estate, 58 Lanc. 441 (1964), where a person named as a colessee with decedent of a safe deposit box was held to be a competent witness on an appeal from a transfer inheritance tax appraisement involving decedent's alleged ownership of a portion of the contents of the box. See also In Re Demetraros' Estate, 35 Del. Co. 411 (1949) and Watson's Estate, 23 D. & C. 669 (1935).

In the light of the aforementioned principles, the facts contained in the petition, answer and testimony are analyzed as follows:

Petitioner and decedent, his sister, executed a contract or lease which specifically declared that all property in the said box which would remain therein immediately preceding the death of either of the lessees was intended and thereby declared to be then owned by lessees as joint tenants, and upon the death of either of the lessees the said joint property should pass to the survivor. Such a contract does create a prima facie valid inter vivos gift of a joint interest with right of survivorship. However, *parol evidence is admissible* to prove an intention or lack of intention to make a gift, as well as delivery or failure of delivery, because the instrument is considered to be incomplete or sometimes equivocal: Secary Estate, 407 Pa. 162, 166, 167 (1962). The evidence presented to this court was clear, precise and convincing that the petitioner had not intended an inter vivos gift to his decedent sister because, inter alia:

1. Decedent was unable to visit the box because of a physical condition without the aid of another individual.

2. Decedent was never gainfully employed and was totally dependent upon him for her support.

3. Decedent never visited the box with the exception of the initial visit when, with the aid of petitioner and their mother, the contract or lease was executed.

4. Decedent did not have a key to the box and although she knew where the second key was, she had been instructed by petitioner not to use it unless he, petitioner, became ill.

5. That the 30 sealed envelopes containing $33,000 were placed in the safe deposit box by petitioner.

6. That petitioner had never made or intended to make an inter vivos gift of the contents of the box to the decedent.

7. Petitioner's testimony was corroborated by the mother of both petitioner and decedent in all respects.

In the light of this clear, uncontradicted and convincing evidence, this court concludes that petitioner, William K. Grove, has sustained his burden of showing a failure of delivery of the box and its contents to decedent.

The inheritance tax assessment made against the aforesaid cash in the safe deposit box rented in the names of William K. Grove and Myrtle A. Grove is accordingly set aside.

## ORDER

And now, to-wit, April 25, 1969, after consideration of the petition and answer as presented, the testimony as heard at the hearing thereon and the briefs as filed by petitioner and respondent, it is hereby ordered, adjudged and decreed that the inheritance tax assessment by the Commonwealth of Pennsylvania against those moneys contained in the 30 envelopes in the safe deposit box rented in the name of William K. Grove and Myrtle A. Grove is set aside.