McMinn, Appellant, *v.* Mammone.

2

Argued April 11, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Leonard L. Ewing*, with him *Robert L. Orr* and *Reed, Ewing & Ray*, for appellant.

*Frank E. Reed*, with him *Lee E. Whitmire, Jr.*, and *Swaney & Whitmire*, for appellee.

OPINION BY HIRT, J., July 19, 1951:

Plaintiff is engaged in the business of supplying and installing heating equipment. This action was brought by him to recover damages for loss of profits on a contract with defendant which the defendant refused to allow him to perform. The jury found for the plaintiff.

In the light of the verdict these facts appear: following informal negotiations, plaintiff inspected two buildings owned by the defendant and was there informed by him as to specific changes which he contemplated in his heating systems. Plaintiff thereupon, as requested, addressed a written proposal to the defendant, under date of July 9, 1949, offering to install a "No. 5-W-30 National Gas Hot Water Boiler" in one of the buildings and a "No. 10-S-40 National Gas Steam Boiler" in the other. In addition plaintiff proposed to supply and connect a "1½ B & G Circulating Pump" with one of the boilers and to install three radiators, as well as perform other work incidental

to the installations as specified in the proposal. The price for complete performance, as stated, was $1,775 payable "Three Hundred dollars with order and balance when completed". The proposal was signed by the plaintiff in defendant's place of business on July 9, 1949, and was then and there accepted by the defendant in writing over his signature. Defendant at his request was given until two days later to make the initial payment of $300. No payment was ever made and when plaintiff sent his workmen to the premises to make the installations, defendant refused to admit them. On sufficient evidence properly submitted the jury found in favor of the plaintiff in the sum of $414.40.

Defendant in his pleading of New Matter in effect claimed that he attached his signature to the proposal made by the plaintiff under the notation "Accepted: July 9, 1949", with the contemporaneous oral understanding that the paper was not intended to constitute a contract, binding on the parties, until the happening of a future event, to-wit: the further perusal of the offer by defendant with his son, and the final approval of it by defendant thereafter within a reasonable time. At the trial the court sustained plaintiff's objection to defendant's offers of proof in support of the above contention; and in submitting the case to the jury the court charged, as a matter of law, that a binding contract was entered into between the parties by defendant's acceptance of the plaintiff's proposal, and the only question for the jury was the amount of plaintiff's loss of profits, resulting from defendant's repudiation of his agreement. After verdict the court however granted a new trial in an order which became appealable because of this statement incorporated in it: ". . and we further certify that we would not grant any new trial except for the fact that we feel that we committed trial error in refusing to permit the de-

4

fendant to develop by cross examination of the plaintiff, and by his own testimony, the fact that the writing which appears on its face to be a complete contract never did, in fact, become a contract binding on the parties". There is error in the order of a new trial. The court was right in its construction of the instrument at the trial of the case and wrong in awarding a new trial on a change of view.

The modern Pennsylvania rule, applicable to parol evidence affecting written instruments was given form in *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791 by restatement thus: " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement' . . . . 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence' . . . The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing' ". And although recognizing that, from necessity, there must be some exceptions to the rule the Supreme Court in that opinion gave notice that they "propose to stand for the integrity of written instruments".

The lower court in granting a new trial relied mainly on two subsequent decisions in *Eaton v. N. Y.*

*Life Ins. Co. of N. Y.,* 315 Pa. 68, 172 A. 121 and *Smilow et al. v. Dickerson,* 357 Pa. 455, 54 A. 2d 883. In the Eaton case a life insurance policy, duly executed, and containing a recital of the payment of the first premium, was delivered to the named insured a few days before her death from accident. Prior to her death she gave the policy to her mother, the named beneficiary therein. In an action on the policy by the named beneficiary, the trial judge refused to admit oral evidence that the premium had not been paid, and that the policy had been delivered for inspection only. Thereupon for lack of affirmation or offer of proof that anything was omitted from the policy by fraud, accident or mistake the trial court directed a verdict for the plaintiff against the insurer for double the face of the policy, in accordance with its terms. On appeal by the insurer the Supreme Court held that possession of the policy by the named beneficiary under the circumstances, was only prima facie evidence of a legally operative delivery of the policy. Accordingly it was held that the insurer had the right to present evidence competent to prove that the policy in fact had been delivered to a prospective insured conditionally and for inspection only and without payment of the first premium. The issue, therefore, whether there was an absolute delivery of the policy became one of fact for a jury and to resolve that issue the Supreme Court reversed the judgment with a venire. And in the *Smilow* case, supra, it appeared that the defendant Dickerson, had paid an obligation of one Broder, plaintiff's decedent, amounting to $10,000. In so doing he proposed to set up on his books fictitious expense payments aggregating that amount which in effect, according to the opinion of the Supreme Court "would transfer Dickerson's payment of Broder's indebtedness to a Federal income tax allowance". To effectuate the scheme the parties executed an agreement purporting to modify

the terms of a prior agreement of employment of Broder by Dickerson. The agreement was antedated to give it the semblance of regularity. But on the actual date of its execution Broder had already performed the services required under the agreement and had been paid in full. On Broder's death his personal representatives brought the above action in equity for an accounting under the terms of the fictitious agreement. The lower court dismissed the bill. In affirming that decree the Supreme Court said: "It is apparent that this was a cumbersome, fraudulent, fictitious transaction. The parties signatory never intended the writing bearing date July 24, 1944, but actually signed December 31, 1944, to be in truth and in fact a binding contract between them. What they really intended to accomplish, as before stated, was to relieve Broder from his obligation; falsely to charge that amount to the United States Government as a tax deduction; [and] forthwith to cancel all future obligations thereunder; . . ." It was accordingly held that parol statements of the parties made at the time of the signing of the fictitious agreement were properly admitted to prove that the instrument never had legal existence or any binding force. Both of the above cases were decided on the basis of their own peculiar facts and do not control the present appeal.

Every exception to the holding of the *Gianni* case must to some extent impinge on the rule there stated. Yet as has been recognized there must, of necessity, be cases which cannot be inexorably governed by the rule. Exceptions have been recognized to prevent grave injustice as in the *Eaton* and *Smilow* cases, supra, where the rule was fraudulently invoked as an instrument of oppression. Defendant here does not present any valid ground for relief. And he cannot be allowed to repudiate his agreement merely because he may have been able to procure the installation at less cost,

or for any other reason. The alleged oral agreement was within the field of the written proposal. Reservation of the right to further consideration of the offer is wholly inconsistent with defendant's acceptance of it; and having done so, he became a party to a complete legal obligation without any uncertainty in any respect as to terms, and he is bound by his bargain. The fallacy of holding otherwise is obvious if it be assumed that it was the plaintiff who sought to avoid his obligation on the ground that defendant had not accepted his proposal with finality.

A very recent case of the Supreme Court applying, and indicating the intention of adhering to, the modern parol evidence rule announced in *Gianni v. Russell & Co., Inc.,* supra, is *Grubb v. Rockey,* 366 Pa. 592, 79 A. 2d 255. This appeal is ruled by the settled law of those cases.

Order reversed and judgment here entered on the verdict.