## Stanger *v.* Epler, Appellant.

Argued April 19, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Maxwell L. Davis,* with him *J. Sydney Hoffman,* for appellant.

*John T. Curtin,* with him *Harry A. Demar* and *Smythe, Straub & Thistle,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 27, 1955:

The question raised by this appeal is whether a gift of a half interest in a fund of money by creation of a joint bank account was in contemplation of marriage and conditioned upon such marriage.

A summary of the salient facts appears in the opinion of the court below: "The evidence shows that the plaintiff [Stanley T. Stanger], now a man of 70 years, a retired railroad employee living on a pension, moved into the home of the defendant [Marie Callahan Epler] as a boarder in 1933. After a short time the parties discussed marriage between them. The defendant at the time was incapable of marriage because she had a living husband. The plaintiff and defendant on July 3, 1947, opened a joint account in the Beneficial Saving Society with the funds of the plaintiff. The Saving Society had them sign a signature card reading, 'Stanley T. Stanger or Marie E. Callahan-Friend.' The funds of the plaintiff so deposited was in the sum of $5,899.62. The Chancellor found that such funds were deposited by plaintiff in contemplation of marriage. With this finding we agree. In August, 1947, the defendant, with the consent of the plaintiff, withdrew from said account the sum of $1,500 to complete a settlement for the purchase of premises situate in Laurel Springs, New Jersey, title to which was taken in the name of the defendant. This sum was advanced by plaintiff for the purchase of the property to be used as a home for the parties when married, or if not married, then as a loan to defendant. When the defendant was advised in 1949 that her then husband had divorced her, she imposed such conditions on the plaintiff which were impossible for him to meet. On June 18, 1950, the defendant married Charles Epler, who was also a boarder in her home. At all times the defendant has retained the possession of the deposit book and has refused to return it or any of the money to

the plaintiff. The Chancellor after a full hearing of this case, granted the prayers of the Bill and ordered the return to the plaintiff of all the funds now on deposit, and for the defendant to pay to plaintiff the sum of $1,850.00 plus interest." The hearing Judge, affirmed by the court in banc, decided that plaintiff had made a gift of an interest in the joint bank account to the defendant which was *"conditioned upon the marriage"* of plaintiff and defendant; that the parol evidence of such conditional gift was "clear, precise and indubitable"; and since defendant refused to marry plaintiff—but married another—he directed the defendant to return the amount of such conditional gift to plaintiff.

When plaintiff and defendant opened the bank account in their joint names with plaintiff's money, they executed an agreement wherein they agreed ". . . that any and all sums that may from time to time stand in this account, to the credit of the undersigned depositors, shall be taken and considered as belonging to them as joint tenants and not as tenants in common; . . ." This written agreement constituted *prima facie evidence* of a valid *inter vivos gift* by plaintiff to defendant of an undivided one-half interest in the joint account: *Culhane's Estate,* 334 Pa. 124, 5 A. 2d 377; *Fell Estate,* 369 Pa. 597, 87 A. 2d 310; *Fuller v. Fuller,* 372 Pa. 239, 93 A. 2d 462. Plaintiff concedes that when he opened the bank account he was fully aware of the effect of his action. Cf. *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1.

While such an agreement and opening of the account is *prima facie* evidence of ownership, parol evidence of intention may be permitted not to alter or vary the terms of the agreement, but to show that the gift was a *conditional* gift: *Eaton v. New York Life Insurance Company of New York,* 315 Pa. 68, 172 A.

121; *Smilow v. Dickerson*, 357 Pa. 455, 54 A. 2d 883. Such evidence, however, must be *clear, precise and indubitable*: *Mader v. Stemler*, 319 Pa. 374, 379, 179 A. 719; *Dempsey v. First National Bank of Scranton*, 359 Pa. 177, 181, 58 A. 2d 14; *Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85.

It was contended by the plaintiff, and approved by the court below, that gifts to a person to whom the donor is engaged to be married, made in contemplation of the marriage, are conditional upon the marriage; and that if the donee breaks the engagement the gifts or their value may be recovered by the donor. Plaintiff-appellee relies upon *Ruehling v. Hornung*, 98 Pa. Superior Ct. 535, which apparently is the only reported appellate court case in this jurisdiction on the subject. There the action was in replevin to recover an engagement ring, watch and medallion. There was proof of an engagement of marriage and that plaintiff, in contemplation of marriage, gave defendant the enumerated articles. There was no evidence that defendant broke the engagement or that the gifts were made upon the *express condition* that they were to be returned if defendant failed to marry the plaintiff. Judge GAWTHROP said in his opinion (p. 538): "We find no case in this State directly bearing on this question, but in 28 C. J. 651, the law is stated thus: 'A gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and upon breach of the marriage engagement by the donee the property may be recovered by the donor. But if the gift is made simply for the purpose of introducing the donor to the donee's acquaintance and to gain her favor, the property is not recoverable, although marriage does not ensue. So where a Christmas present is made by a man to his fiancee it becomes her property and the subse-

quent breaking of the engagement does not entitle him to recover it back.' " The opinion cited a text book and cases from other states which hold that in order for a donor to recover it must be shown that the gifts were either made upon an *express condition* that they were to be returned in case the donee failed to marry donor, or that the gifts were *induced* by the donee's promise to marry the donor. The judgment of the Superior Court was that an engagement ring is a symbol of a contract to marry, subject to the implied condition that if the marriage does not take place due to the fault of the donee, the ring is to be returned. This was held to be a question for the jury. The watch and medallion could not be recovered since there was no evidence that these gifts were made *upon the express condition* that they were to be returned if the donee failed to marry the donor. See also: *Friske v. Cebula,* 59 D. & C. 46; *Bullen v. Neuweiler,* 73 D. & C. 207; *Preshner v. Goodman,* 83 D. & C. 387; Restatement, Restitution, sec. 58; Annotation, 92 ALR 604.

A review of the record convinces us that the finding of fact that the gift of a one-half undivided interest in the bank account was *conditioned* upon the marriage, is not supported by evidence which is clear, precise and indubitable.

Doubtless plaintiff made the gift anticipatory that he was going to marry defendant. Plaintiff's testimony, however, is contradictory as to whether or not there was an actual engagement or contract to marry. Plaintiff testified: "I had not really proposed, but it had been talked over. We both said, 'O. K., we will get married.'" But he also testified: "I never did ask Mrs. Callahan to marry me", and "I never came out asking to marry her and she never came out asking me to marry her". At no time during defendant's testimony did she ever admit that there had been an

actual engagement to marry. When pressed to tell what plaintiff had said relative to marriage, she constantly employed the equivocal phrase that getting married "wouldn't be a bad idea".

Furthermore, plaintiff by his testimony has not surmounted a formidable barrier. The presumption is that the writing constituted an absolute gift. Proof of an engagement, and that the gift was conditioned upon marriage, must be established by evidence clear, precise and indubitable. Such burden cannot be met solely by inference. As Mr. Justice BELL said in *Furjanick Estate,* 375 Pa. 484, 491, 100 A. 2d 85 : "We have repeatedly said and we reiterate that we intend to uphold the integrity of written instruments. . . ." The validity of the written agreement of gift is conceded. To prove that such gift, absolute on its face, was *conditional* requires parol evidence of the quality indicated.

A joint tenancy is severable by the action, voluntary or involuntary, of either of the parties. The effect of the severance is to make the parties tenants in common. See opinion of Judge PARKER (later Justice PARKER of this Court) in *American Oil Company v. Falconer,* 136 Pa. Superior Ct. 598, 8 A. 2d 418, with the many cases therein cited. See also: Annotation 161 ALR 1139.

The decree is reversed and the record remanded to the court below to make an appropriate decree awarding plaintiff a full one-half part and share of all moneys now in, or which heretofore formed part of, the joint bank account herein involved, and the bank is directed to make payment in accordance therewith. Costs to be equally divided.

CONCURRING OPINION BY MR. JUSTICE BELL:

In the absence of fraud, accident or mistake, parol evidence as to a prior or contemporaneous or inducing oral promise or representation or agreement is not admissible in evidence if it alters or adds to or modifies or contradicts or conflicts with a written agreement which purportedly contains the entire agreement between the parties: *Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85; *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255; *Walker v. Saricks*, 360 Pa. 594, 63 A. 2d 9; *McMinn v. Mammone*, 169 Pa. Superior Ct. 1, 82 A. 2d 70.

The reason for and the wisdom of the so-called modern Pennsylvania Parol Evidence Rule is apparent from the many decisions of this Court commencing with *Gianni v. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791. As recently as 1953 we said in *Furjanick Estate*, 375 Pa., supra (page 491): "We have repeatedly said and we reiterate that we intend to uphold the integrity of written instruments and will not permit the Parol Evidence Rule to be circumvented or undermined." That is unfortunately exactly what the majority opinion does.

There is, in my judgment, no difference in reason or in principle between the cases hereinabove cited and a case where the alleged prior oral agreement would make the written agreement null and void. The admission of oral testimony to nullify and destroy a complete written agreement subsequently entered into (and delivered) by the parties, without fraud, accident or mistake, emasculates and nullifies the Parol Evidence Rule, and, as Mr. Justice DREW pointed out, opens wide the door to misrecollection or false statements just as much as does an inducing oral representation or agreement which changes or contradicts the written agreement. The reason for the modern Parol Evidence Rule is exactly the same in each such case—if it is

wise to exclude parol evidence when it seeks to modify or contradict the written agreement it is, *a fortiori*, wise to exclude it when it seeks to *destroy* the written agreement. Experience has demonstrated that the advantages of the Rule far outweigh the injury which occasionally results. *Smilow v. Dickerson*, 357 Pa. 455, 463, 54 A. 2d 883, is out of line with all the decisions of this Court in the last 30 years and in my judgment should not be followed.

A person who is injured by a breach of a conditional or inducing or contemporaneous oral agreement is not helpless or without remedy. For example, where fraud, accident or mistake occurs, the rule against the admission of parol evidence does not apply; similarly, if an agent or third party violates oral instructions or breaches an alleged oral agreement, or an escrow agreement, the person injured may recover for such breach. It is, I am convinced, very unwise to relax or breach our sound and salutary Parol Evidence Rule which brought order and certainty out of chaos and has worked so well ever since its adoption in 1924.

The actions of Miss Callahan are morally indefensible, but I agree with the majority that even if parol evidence be admissible, neither equity nor law can, under the evidence in this case, relieve plaintiff from his foolish act.