Lynn M. NICHOLSON, Appellant,

v.

Tobin M. JOHNSTON, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.

Filed July 19, 2004.

Susan M. Kadel, Hershey, for appellant.

Douglas P. France, York, for appellee.

BEFORE: STEVENS, PANELLA, and OLSZEWSKI, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant Lynn Nicholson challenges an order of the Court of Common Pleas of York County which affirmed an adjudication and decree nisi.

¶ 2 Nicholson became romantically involved with Appellee, Tobin Johnston, in 1989, and in 1995 they became engaged to be married. In anticipation of marriage, they purchased a home on June 15, 1998, for $185,000.00. Although the parties were named joint tenants with a right of survivorship, and both were signatories to the $148,000.00 mortgage, the parties agreed that Johnston would be responsible for paying the mortgage and Nicholson would be responsible for the other costs of living. Accordingly, Johnston paid down payment and settlement costs in the amount of $43,652.05. The expected marriage never occurred, however, and on November 17, 1999, the parties separated and Nicholson moved from the home. Johnston has made all the required mortgage, tax, insurance, and sewer payments since that time.

¶ 3 Nearly two years after she moved from the home, Nicholson filed a complaint for partition of the property on November 9, 2001, requesting that it be sold and the proceeds divided. Johnston subsequently agreed to the partition, and the parties motioned the court for an order accomplishing that goal. The matter of the parties' respective interests in the property remained outstanding, however, and a master's hearing was held on August 22, 2002, before James A. Holtzer, Esq.

¶ 4 The Master filed his report on September 25, 2002.[1] Pertinent to the appeal before us, the Master was "not persuaded by [Johnston's] argument that the titling of the real estate was any type of a conditional gift to [Nicholson]," and the Master concluded that "at the time of original conveyance each party became owner of one-half interest in the subject property." Master's report at 4. Thus the Master refused to afford Johnston any direct credit for payments he made to the mortgage principal or interest. *Id.* Of additional concern to the present appeal, the Master used the date of the parties' separation to determine the mortgage balance. *Id.*

¶ 5 Both parties filed exceptions to the Master's report, and on May 30, 2003, the Honorable Penny Blackwell issued an adjudication and decree nisi. Although Judge Blackwell declined to disturb the Master's use of the date of separation to determine the mortgage balance, she disagreed with the Master's refusal to credit Johnston with the payment and settlement costs he paid. Adjudication at 6–8.[2] Specifically, Judge Blackwell found:

---

1. The Master found that each parties' interest in the property amounted to $26,602.07, based on his conclusion that the current market value of the property was $215,000.00, the mortgage at the time of separation was $144,495.86, and the costs of the sale of the property would be $17,300.00, leaving a net value of $53,204.14, half of which he assigned to each party. The Master refused to credit Johnston with the $43,652.05 down payment and settlement costs he paid, but awarded him $3,698.97 for real estate taxes and $503.25 for sewer fees he paid. Thus, the Master found that Nicholson's adjusted interest in the property was $22,399.85, and Johnston's adjusted interest was $30,804.29.

2. As a whole, the Adjudication found that the fair market value of the property was $215,000.00, and that the mortgage at the time of separation was $144,495.86, leaving a value of $70,504.14. From this Judge Blackwell subtracted refinancing costs in the amount of $2,000.00, the $43,652.09 down payment made by Johnston, and the $1,200.00 deposit made by Nicholson, leaving a value of $23,652.09, or $11,826.04 assigned to each party. Judge Blackwell then credited Johnston $43,652.05 for the down payment, $3,698.97 for the real estate taxes, $503.25 for the sewer fees, and $1,000.00 for half the refinancing costs, resulting in an interest in

The deed is very specific in setting forth that the property is deeded "as joint tenants with a right of survivorship and not as tenants in common." The Court in *Deloatch [DeLoatch] v. Murphy*, 369 Pa.Super. 255, 259, 535 A.2d 146, 148 (Pa.Super.1987) cited *Teacher v. Kijurina*, 365 Pa. 480, 76 A.2d 197 (1950) in construing the proprietary interest stated in the deed: (f)urthermore, in construing a deed, as in the case of a will, it is not what the parties may have intended by the language used but what is the meaning of the words," By this subject deed's language, one half interest was conveyed to each party.

Having said that, however, it is clear that Johnston's involvement was primary to the issuance of the mortgage and deed. Nicholson conceded that point in her testimony. It is also clear that these parties were engaged to be married and they intended to marry. The wording of the deed represented their commitment at the time of the purchase of the residence.

The Court is convinced that the parties' actions in purchasing this property was prompted, at the time of the purchase, by their commitment to marry. Their cumulative testimony as well as the wording of the deed substantiate this intent. Johnston's substantial down payment and Nicholson's payment reflected that commitment. ... Johnston's down payment and Nicholson's closing costs will be reimbursed respectively.

Adjudication at 6–7. Additionally, in her Supplemental Pa.R.A.P. 1925(a) opinion, Judge Blackwell expounds:

The Court finds that, in the case *sub judice,* the financial arrangements were a conditional gift and therefore clearly and indubitably contingent upon a marriage occurring. *Stanger v. Epler,* 382 Pa. 411, 415 115 A.2d 197, 199 (1955). [Johnston] advanced monies, for the down payment on a home, with the understanding that a marriage would occur between he and [Nicholson]. That marriage did not occur. Therefore, this Court determined that Johnston is entitled to recover the initial payments he made.

The Court concluded, with regard to the proportionate share of the rental value of the property, that the mortgage expenses incurred by Johnston offset any claims by Nicholson for rental payments. Nicholson did not contribute any monies toward the mortgage expenses. As the Court already concluded that the arrangement was contingent upon the effectuation of a marriage and the marriage did not occur, it is only equitable that Nicholson not benefit from payments made solely by Johnston.

The date of the parties' separation was November, 1999. The Court determined that the mortgage balance as of that date would be the equitable amount to use for calculation purposes.

Supplemental Pa.R.A.P. 1925(a) Opinion at 1–2.

¶ 6 Following Judge Blackwell's decision, Nicholson filed a motion for post-trial relief,[3] which was denied by a July 23, 2003

the property of $60,680.31. Nicholson was credited for the $1,200.00 deposit, and $1,000.00 for half the refinancing costs, resulting in an interest in the property of $9,823.83. Judge Blackwell granted Johnston sole title to the property, and directed the parties to refinance the property to re-

move Nicholson's name from the mortgage. The court further directed that at the time of the refinancing, Johnston pay Nicholson her $9,823.83 share of the property.

3. In her July 23, 2003 order, Judge Blackwell explained that under her direction, Nicholson erroneously filed exceptions under Pa.R.C.P.

order which reaffirmed and adopted as final a June 24, 2003 amended decree nisi.[4] Nicholson then appealed to this Court on August 5, 2003. She asserts that Judge Blackwell erred in concluding that Johnston was entitled to reimbursement of his contributions to the down payment of the property, and that the judge erred in using the mortgage balance as of the date of the parties' separation, rather than the balance at the time of partition. Nicholson's brief at 4.

¶ 7 We examine the lower court's conclusions here for an abuse of discretion or error of law. *Spears v. Spears*, 769 A.2d 523, 524 (Pa.Super.2001) ("[T]he scope of appellate review of a decree in equity is limited. Absent an abuse of discretion or an error of law, we are bound to accept the findings of the trial court or master.").

¶ 8 We first address Nicholson's contention that Johnston is not entitled to reimbursement of his down payment monies. She asserts that because the parties held the property as "joint tenants with right of survivorship," she is entitled to one-half the value of the property, and it was error for the court to consider the down payment money supplied by Johnston.

▮ ¶ 9 "A joint tenancy in real estate with right of survivorship is created by the co-existence of the four unities of interest, title, time and possession." *Allison v. Powell*, 333 Pa.Super. 48, 481 A.2d 1215, (1984) (citation omitted).

> Each joint tenant holds an undivided share of the whole estate. *American Oil Co. v. Falconer*, 136 Pa.Super. 598, 8 A.2d 418 (1939). The survivorship characteristic of a joint tenancy precludes a joint tenant from disposing of his inter-

est by will. *Hoffert v. Bastian*, 54 Pa. D. & C. 146 (1945). During his lifetime, however, a joint tenant may convey his interest to a third party, or he may have the joint tenancy property partitioned, or his interest may be seized and sold by his creditors in execution. Ladner, *Conveyancing in Pennsylvania*, § 1.06 at p. 11–12 (Bisel, 4th ed.1979).

> A joint tenancy is severed when one or more of the four unities is destroyed. *Riccelli v. Forcinito*, 407 Pa.Super. 629, 595 A.2d 1322 (1991). A joint tenancy in realty with right of survivorship is severable by the act, voluntary or involuntary, of either of the parties. *Sheridan v. Lucey*, 395 Pa. 306, 149 A.2d 444 (1959). ... In the context of realty, an act must be a sufficient manifestation of an intent to sever the joint tenancy that the actor is unable to retreat from the position of creating a severance of the joint tenancy. *See, Allison v. Powell*, 333 Pa.Super. 48, 481 A.2d 1215 (1984) (petition to partition joint tenancy, without more, is not sufficient act to sever tenancy because petitioner can withdraw before severance occurs).

*General Credit Company v. Cleck*, 415 Pa.Super. 338, 609 A.2d 553, 556 (1992).

▮ ¶ 10 As we noted above, although Judge Blackwell explicitly acknowledged that the property was deeded "as joint tenants with a right of survivorship and not as tenants in common," Adjudication at 6, she also considered the circumstances surrounding the purchase of the property as follows:

> [I]t is clear that Johnston's involvement was primary to the issuance of the mortgage and deed. Nicholson conceded

---

1518, which has been rescinded. The court indicates that it reviewed the exceptions as if they were properly filed as a motion for post-trial relief.

4. The amended decree nisi was filed to correct a discrepancy between the original decree nisi and adjudication.

that point in her testimony. It is also clear that these parties were engaged to be married and they intended to marry. The wording of the deed represented their commitment at the time of the purchase of the residence.

*Id.* at 6–7. Therefore, Judge Blackwell found that the down payment money constituted a conditional gift contingent upon a marriage occurring, and, since the marriage did not occur, Judge Blackwell concluded that Johnston was entitled to recover the down payment he made. Supplemental 1925(a) opinion at 1 (*citing Stanger,* 382 Pa. at 415, 115 A.2d at 199).[5]

¶ 11 In *Lindh v. Surman,* 702 A.2d 560 (Pa.Super.1997), affirmed 560 Pa. 1, 742 A.2d 643, a panel of this Court discussed the law of conditional gifts set forth in the Restatement of Restitution:

Gifts Made in Reliance on a Relation.

A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that an existing relation will continue or that a future relation will come into existence is not realized, **unless the conferring of the benefit is conditioned thereon.**

Comment:

(b) Conditional gifts. The gift may be conditional upon the continuance or creation of a relation, and if conditional the donor is entitled to its return if the relation terminates or is not entered into. The condition may be stated in specific words or it may be inferred from the circumstances. Likewise, as in the case of engagement and wedding gifts, justice may require the creation of a condition although the donor had no such condition in mind.

(c) Wedding and engagement gifts. Gifts made in the hope that a marriage or contract of marriage will result are not recoverable, in the absence of fraud. Gifts made in anticipation of marriage are not ordinarily expressed to be conditional and, although there is an engagement to marry, if the marriage fails to occur without the fault of the donee, normally the gift cannot be recovered. If, however, the donee obtained the gift fraudulently or if the gift was made for a purpose which could be achieved only by the marriage, a donor who is not himself at fault is entitled to restitution if the marriage does not take place, even if the gift was of money. If there is an engagement to marry and the donee, having received the gift without fraud, later wrongfully breaks the promise of marriage, the donor is entitled to restitution if the gift is an engagement ring, a family heirloom or other similar thing intimately connected with the marriage, but not if the gift is one of money intended to be used by the donee before the marriage.

*Lindh,* 702 A.2d at 561–562 (emphasis added). Additionally, the Reporter's notes recognize:

5. As a panel of this Court stated:

The conceptual basis of a cause of action based on the right to return of gifts made on the condition of subsequent marriage was explained in *Ruehling v. Hornung,* 98 Pa.Super. 535 (1930), subsequently endorsed in *Stanger v. Epler,* 382 Pa. 411, 115 A.2d 197 (1955). The law of conditional gifts creates a cause of action distinct from breach of promise to marry suits. Its rec-

ognition in the common law is based upon an implied condition theory. A gift given in contemplation of marriage, such as an engagement ring, was not final but conditioned upon the occurrence of the wedding. As such, it was subject to being returned to the donor upon the failure of the condition subsequent.

*Ferraro v. Singh,* 343 Pa.Super. 576, 495 A.2d 946, 948 (1985).

As to gifts other than services or engagement rings the decided cases have generally allowed recovery upon the same basis as in the case of the rings. It is to be noted, however, that in all the cases in which recovery was allowed the money or other things were transferred in contemplation of marriage in the sense that they were to be used by the parties after marriage.

Restatement of Restitution, § 58 Reporter's Notes. Here, it is clear that based on the testimony presented to her, Judge Blackwell found that Johnston extended the down payment monies in question in contemplation of marriage and for the purchase of a property to be used by the parties after the marriage occurred. Adjudication at 6; Supplemental 1925(a) opinion at 1.

[T]rial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. The finder of fact is entitled to weigh the evidence presented and access its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Fonzi v. Fonzi,* 430 Pa.Super. 95, 633 A.2d 634, 636–637 (1993) (citations omitted). We find no abuse of discretion or error of law in Judge Blackwell's conclusion here. *Lindh, supra, Fonzi, supra.*

▮ ¶ 12 Nicholson also contends that Judge Blackwell used an incorrect mortgage balance when apportioning the parties' interests. Nicholson's brief at 4. The Master used the mortgage balance as of the parties' separation, and Nicholson objected thereto in her exceptions. Nicholson's Exceptions to the Master's Report at 1. Judge Blackwell used the same mortgage balance based on the following reasoning:

The Court concluded, with regard to the proportionate share of the rental value of the property, that the mortgage expenses incurred by Johnston offset any claims by Nicholson for rental payments. Nicholson did not contribute any monies toward the mortgage expenses. As the Court already concluded that the arrangement was contingent upon the effectuation of a marriage and the marriage did not occur, it is only equitable that Nicholson not benefit from payments made solely by Johnston.

The date of the parties' separation was November, 1999. The Court determined that the mortgage balance as of that date would be the equitable amount to use for calculation purposes.

Supplemental Pa.R.A.P. 1925(a) Opinion at 2. Nicholson cites no case law to support her claim. In contrast, Johnston argues that Nicholson has already benefited from Judge Blackwell's decision to use a 2002 value for the property which is higher than its value as of the date of separation, and that Nicholson did not contribute towards payment of the mortgage principal, as he, Johnston did. Therefore, he contends, Judge Blackwell's use of the date of separation to determine the mortgage balance produces an equitable result that should not be disturbed on appeal. We agree. Finding no abuse of discretion or error of law, we affirm Judge Blackwell's decision in this regard. *Fonzi, supra.*

¶ 13 For the foregoing reasons, we affirm the order of the lower court.

¶ 14 Affirmed.