J-A24031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE M. THIERRY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANN YAMULLA | : | No. 523 EDA 2021 |

Appeal from the Order Entered February 23, 2021
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-07329

| | | |
|---|---|---|
| CHRISTINE M. THIERRY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANN YAMULLA | : | |
| | : | |
| Appellant | : | No. 628 EDA 2021 |

Appeal from the Order Entered February 5, 2021
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-07329

BEFORE:  LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED JANUARY 14, 2022**

Christine M. Thierry (Thierry) appeals from the final order in the Court of Common Pleas of Bucks County in this partition action involving the real property located at 3879 Charter Club Drive, Doylestown, Pennsylvania (Charter Club Property) owned by herself and Ann Yamulla (Yamulla) as joint

_____

[*] Retired Senior Judge assigned to the Superior Court.

tenants with right of survivorship. Thierry argues that she was entitled to 50 percent of the Charter Club Property's net value instead of the 50 percent of its increase in value that she was awarded. Yamulla has cross-appealed, arguing that Thierry was not entitled to any money because the Charter Club Property was a conditional gift, and she was entitled to its return on condition broken. We affirm.

We take the following factual background and procedural history from the trial court's May 5, 2021 opinion, the parties' September 14, 2020 stipulations/findings of fact (Stipulations/FOF), the Master's Report and Recommendation (Master's Report) and our independent review of the certified record.

**I.**

**A.**

The parties met on July 6, 2015, at a social event and began dating shortly thereafter. (*See* N.T. Master's Hearing, 10/06/20, at 13; N.T. Master's Hearing, 10/14/20, at 172). At the time, Yamulla was married to her now ex-husband. (Stipulations/FOF, at Paragraph 5). Thierry had two children that would be the heirs to her estate and Yamulla had four children who would inherit her estate. (*See* Master's Report, at 1); (Stipulations/FOF, at Paragraphs 2, 3).

Thierry and Yamulla maintained the intense on-again, off-again relationship from 2015-2018. (*See* N.T. Master's Hearing, 10/14/20, at 175);

(Master's Report and Recommendation, 2/05/21 (Master's Report), at 3); (Stipulations/FOF, at Paragraph 31).[1] They discussed their relationship, which included cohabitation, sexual activity, sexually explicit texting and explicit photographs. (**See** Stipulations/FOF, at Paragraphs 7-8). The parties exchanged thousands of text messages over the length of their relationship. (**See** Stipulations/FOF, at Paragraph 8).

Thierry and Yamulla purchased real property at 4768 Essex Drive, Plumsteadville, Pennsylvania (Essex Drive Property) on June 30, 2016, as joint tenants with right of survivorship. (**See** N.T. Master's Hearing, 10/14/20, at 180-81); (Master's Report, at 5); (Stipulations/FOF, at Paragraph 13). Prior to October 4, 2017, the parties resided at the Essex Drive Property off and on, sometimes doing so together. (**See** Master's Report, at 6; Stipulations/FOF, at Paragraph 14). The parties both contributed to the acquisition and costs to maintain the Essex Drive Property. (**See** Master's Report, at 6). Thierry and Yamulla shared equally in the proceeds when the Essex Drive Property was liquidated. (**See id.**).

In December 2016, Thierry proposed marriage to Yamulla with an engagement ring and posted their engagement on Facebook. Yamulla was still married to her now ex-husband. (**See** Stipulations/FOF, at Paragraphs 9-12).

---

[1] The Master's Report is unpaginated. All page numbers have been provided.

**B.**

On September 7, 2017, Yamulla purchased the Charter Club Property that is the subject of this litigation. (***See*** Master's Report, at 4). She paid the $596,984.97 total acquisition cost in cash and titled the property in her own name. (***See*** Stipulations/FOF, at Paragraphs 17-19). Necessarily, there are no claims of mortgage, liens or encumbrances that affect the Charter Club Property. (***See*** Master's Report, at 4). Thierry did not contribute any funds to purchase and/or maintain the Charter Club Property. (***See*** Stipulations/FOF, at Paragraphs 22-25).

On October 4, 2017, Yamulla hired an attorney to execute a deed transferring title to the Charter Club Property to Thierry and Yamulla as joint tenants with right of survivorship. The parties disputed the purpose of the gift, with Yamulla testifying it was on condition of marriage or continued relationship, and Thierry maintaining that there was no condition and that Yamulla did so to demonstrate her commitment to the relationship after cheating again. (***See*** N.T. Master's Hearing, 10/06/20, at 21-22, 29-31); (N.T. Master's Hearing, 10/14/20, at 204-10); (Master's Report, at 4); (Stipulations/FOF, at Paragraph 21). Yamulla paid all costs associated with the Charter Club Property's title transfer, including recording fees and the $5,003.12 transfer tax. (***See*** Stipulations/FOF, at Paragraph 20); (N.T. Master's Hearing, 10/06/20, at 57). Thierry did not contribute anything toward (1) the purchase of the Charter Club Property; (2) the costs of

acquisition of the Charter Club Property; (3) the payment of any costs associated with the Charter Club Property; or (4) the maintenance and upkeep of the Charter Club Property. (**See** Master's Report, at 5; Stipulations/FOF, at Paragraphs 22-25). Yamulla has made other expenditures on the Charter Club Property. (**See** Master's Report, at 5).

Thierry moved possessions into the Charter Club Property, but due to the tumultuous nature of the parties' relationship, she has never resided there. (**See** N.T. Master's Hearing, 10/06/20, at 59); (Master's Report, at 5). Yamulla did not allow Thierry, who had to break a window to get in, free access to the Charter Club Property, changing the locks and codes several times. (**See** N.T. Master's Hearing, 10/06/20, at 159-60); (Master's Report, at 5); (Stipulations/FOF, at Paragraph 30). There is no mention of Yamulla giving Thierry a key to the Charter Club Property in the record.

Yamulla has been licensed to practice law for approximately 25 years, with experience and training in both real estate and contract law. (**See** Stipulations/FOF, at Paragraphs 32-33). She specifically requested that the deed to the Charter Club Property be titled as joint tenants with right to survivorship and did not request any conditions for title transfer be specified in the deed. (**See id.** at Paragraphs 34-35). The deed is the only document that identifies the parties' legal interests in the Charter Club Property. (**See** Master's Report, at 4, Stipulations, at Paragraph 36).

**C.**

In approximately November 2018, the parties separated for the last time and Thierry filed a complaint in equity seeking partition of the Charter Club Property on December 12, 2018. In her February 12, 2019 answer and new matter, Yamulla averred that the transfer of title was made as a qualified or conditional gift.

On April 18, 2019, pursuant to Pennsylvania Rule of Civil Procedure 1557,[2] the trial court issued a stipulated order (Stipulated Order) that directed that the Charter Club Property be partitioned. It also found that (1) Thierry and Yamulla possessed a 100 percent interest in the Charter Club Property as joint tenants with right of survivorship; (2) the Charter Club Property was incapable of division without prejudice; (3) the Charter Club Property was incapable of proportionate division; and (4) the parties stipulated to the appointment of a Master. (**See** Stipulated Order).

On May 22, 2019, Daniel M. Kean, Esq. was appointed as the Master in this matter. He held an initial pre-trial conference with the parties' counsel on June 4, 2019, during which counsel agreed that the parties would complete discovery and the Master could obtain an appraisal of the Charter Club

---

[2] Rule 1557 states, in pertinent part, that, "if the court determines that there shall be partition because of a default or admission … the court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property." Pa.R.C.P. 1557.

Property. The Charter Club Property was appraised by agreement of the parties at $600,000.00, an increase of $20,000.000. (**See** Master's Report, at 5 n.3). On September 14, 2020, counsel for the parties submitted the Stipulations/FOF and Evidentiary Stipulations to the Master.

The Master's Hearing was held on October 6 and 14, 2020. On February 5, 2021, the Master issued his Report[3] in which he found, in pertinent part, that: (1) The Charter Club Property is not capable of proportionate division pursuant to Rule 1561; (2) Yamulla was not entitled to recovery for acquisition costs; (3) Due to insufficient credible evidence, Yamulla's claim that the title transfer of the Charter Club Property was a conditional gift fails; (4) Yamulla is not entitled to an award for expenditures made on the Charter Club Property because they did not enhance its value and were not necessary to preserve and protect its integrity; (5) A partition action is an action in equity; (6) Equity dictates that title to the Charter Club Property be awarded to Yamulla; (7) Equity dictates that Thierry is entitled to an equitable 50 percent share in the increase in value of the Charter Club Property of $10,000.00; and (8) In light of the equitable awards made, Yamulla shall pay costs of the partition proceedings.

---

[3] The Stipulated Order, Stipulations/FOF and Stipulated Evidence were attached to the Report as Exhibits A, B and C, respectively.

Both Thierry and Yamulla filed exceptions to the Master's Report. On February 23, 2021, the court issued its final order and decree (Final Order) approving the Master's Report and Recommendation.[4] The Final Order and Decree: (1) conveyed the Property to Yamulla by the recording of a deed; (2) directed the parties to cooperate to ensure said deed was properly recorded; (3) ordered Yamulla to pay Thierry $10,000.00 at the time of the recording of said deed; and (4) instructed Yamulla to pay all costs incurred by the Master.

Thierry and Yamulla both timely appealed.[5] They and the court have complied with Rule 1925. *See* Pa.R.A.P. 1925.

## II.

Thierry argues that the trial court erred in using equitable principles to override her legal right to 50 percent of the Charter Club Property's net value as a joint tenant with right of survivorship[6] pursuant to the terms of the deed. (*See* Thierry's Brief, at 6). Her argument is simple; she maintains that

---

[4] It did not rule on the exceptions.

[5] "In an appeal from a trial court sitting in equity, the standard of review is rigorous. A chancellor's findings of fact will not be disturbed absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings." *Lilly v. Markvan*, 763 A.2d 370, 372 (Pa. 2000) (citation omitted). "A chancellor's conclusions of law are subject to stricter scrutiny. Unless the rules of law relied on are palpably wrong or clearly inapplicable, however, a grant of injunctive relief will not be reversed on appeal." *Id.* (citation omitted).

[6] The parties also stipulated that they were joint tenants with the right of survivorship.

because she and Yamulla held title to the Charter Club Property as joint tenants with right of survivorship, she was entitled to a 50 percent interest in the Charter Club Property at the time of partition even though she contributed nothing towards its purchase, making it an error to apply equitable principles to award a 50 percent of the increase in value of the Charter Club Property and not 50 percent of the value of the property.

**A.**

Contrary to Thierry's argument, equitable principles do apply in a partition action to determine the relevant interest the parties have in the proceeds from the property.

In ***Kapcsos v. Benshoff***, 194 A.3d 139 (Pa. Super. 2018), we observed that "Pennsylvania Rules of Civil Procedure 1551[–]1574 split a partition action into two, distinct, chronological parts. Rules 1551[–]1557 govern Part 1, and Rules 1558[–]1574 govern Part 2. Each part, by rule, must produce its own, distinct, appealable order." ***Id.*** at 142. In the first part, the court enters an order pursuant to Rule 1557 that "directs partition of the parties' legal interests into severalty." ***See id.*** at 142; ***see also*** Pa.R.C.P. 1557. **"[T]he entry and recording of [the Rule 1557] order directing partition ... terminate[s] a joint tenancy.**" ***Kapcsos***, ***supra*** at 142 (emphasis added).

"Following that, **Part 2 is purely an equitable proceeding** where the trial judge or master balances the equities to decide what form the partitioning will take." *Id.* at 142-43 (emphasis added); *see also* Pa.R.C.P. 1570.

> A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties.

*Kapcsos*, *supra* at 142.

If the court gives the property to one party, it then orders that party to pay any other party her respective share. *See id.* at 143 ("In this scenario, one party gets an order of conveyance granting undivided title to the whole property (which is recorded), and the other party receives a cash buy-out, known as "owelty.") (citation omitted); *see also* Pa.R.C.P. 1562. The court calculates owelty based on the equities of what each person invested in the subject real property. "It takes those investments and then divides them by each parties' fractional interest in the property, as determined in Part 1." *Kapcsos*, *supra* at 143 (citation omitted).

**B.**

In this case, it is undisputed that the trial court entered the Stipulated Order pursuant to Rule 1557 directing that the Charter Club Property be partitioned. It also found that (1) Thierry and Yamulla possessed a 100 percent interest in the Charter Club Property as joint tenants with right of survivorship; (2) the Charter Club Property was incapable of division without

prejudice; (3) the Charter Club Property was incapable of proportionate division; and (4) the parties stipulated to the appointment of a Master. (*See* Stipulated Order). *See id.* at 142.

Based on the law of this Commonwealth, the Rule 1557 order terminated the joint tenancy so that the parties could then proceed to part two of the proceeding, which was purely equitable and in which the Master "balances the equities to decide what form the partitioning will take" and calculates owelty based on the equities of what each person invested in the subject real property. *Kapcsos*, *supra* at 142-43; Pa.R.C.P. 1570.

As the trial court noted

> Thierry contributed next to nothing towards the Property, nor could she freely access the Property. Conversely, Ms. Yamulla, in addition to having bought the Property, was the only one who actually put any money towards it, from paying title transfer tax to the homeowners insurance. Furthermore, Ms. Thierry failed to present any evidence stating that she was entitled to more than 50% of the increase in value of property.

(Trial Ct. Op., at 11) (record citations omitted).

Accordingly, the trial court did not abuse its discretion when it adopted the Master's Report and Proposed Order that relied on equitable considerations to not give each party 50 percent of the proceeds of the property.[7] *See Lilly*, *supra* at 372.

---

[7] Neither are we legally persuaded by Thierry's reliance on *Masgai v. Masgai*, 333 A.2d 861 (Pa. 1975), in support of her position that "title held by parties as joint tenants with right of survivorship must be divided equally among

*(Footnote Continued Next Page)*

- 11 -

# III.

## A.

In her appeal, Yamulla contends that the trial court erred in finding that the transfer of the Charter Club Property was not a conditional gift, "which would mandate consolidation of title in [her] without owelty" to Thierry. (Yamulla's Brief, at 4); (*see id.* at 2-3). She argues that "[t]he transfer of title was made in furtherance of a relation, the gift was substantial and therefore can be assumed to be conditional, the condition, even if inferred, was the continuation of the relation, and it is Thierry who broke off the relationship." (*Id.* at 47). In effect, this is a challenge to the court's order directing Yamulla to pay Thierry $10,000.00 for the 50 percent increase in

---

them" in a partition action. (Thierry's Brief, at 8). In fact, *Masgai* did not announce this. *Masgai* involved a "suit in equity brought … to obtain a partition" of a property purportedly held by parties who were not legally married as tenants by the entireties and the Court's consideration of whether the trial court properly found that appellee had created a trust when he conveyed the property to himself and appellant and, therefore, she lacked standing to seek partition. *See Masgai*, *supra* at 862-64. After recognizing that unmarried individuals could not hold a property as tenants by the entireties, the court concluded that appellee had not established that a trust had been created, and instead found that appellee had made a gift to appellant. It declined to consider exactly what type of title she enjoyed, however, because she, "[as] a joint owner, had standing to maintain an action for partition." *Id.* at 863. Thierry takes *Masgai's* language, "equity should not act to convert an absolute ownership into an estate of lesser quantity," out of context. (Thierry's Brief, at 8). The full sentence is "unless the evidence of the existence of an oral trust is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quantity." *Masgai*, *supra* at 865. *Masgai* is distinguishable from the circumstances in this case and Thierry's reliance on it is not legally persuasive.

value of the property that occurred while the property was held by them as joint tenants.

We have long held that a written agreement transferring property "is *prima facie* evidence of ownership, [and] parol evidence of intention may be permitted not to alter or vary the terms of the agreement, but to show that the gift was a **conditional** gift." *Stanger v. Epler*, 115 A.2d 197, 198 (Pa. 1955) (citations omitted; emphasis omitted).

> The presumption is that the writing constituted an absolute gift. Proof of an engagement, and that the gift was conditioned upon marriage, must be established by evidence clear, precise and indubitable. Such burden cannot be met solely by inference.
>
> We have repeatedly said and we reiterate that we intend to uphold the integrity of written instruments.

*Id.* at 199-200 (citation and quotation marks omitted); **see also** Restatement of Restitution, § 58 (1937).[8]

---

[8] Pursuant to Section 58 of the Restatement of Law-Restitution:

> A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that an existing relation will continue or that a future relation will come into existence is not realized, unless the conferring of the benefit is conditioned thereon.

Comment:

> *a*. The rule stated in this Section is applicable to … a man or woman who makes gifts to a person with whom promises to marry have been exchanged, even though subsequently there is a wrongful termination of the relation by the donee. If, however,

*(Footnote Continued Next Page)*

the relation has been fraudulently entered into by the donee for the purpose of receiving gifts and subsequently terminating the relation, or if the relation is simulated, or if there is other fraudulent conduct because of which the gifts are made, then restitution is granted.  Likewise the gift may be conditional as stated in Comments *b* and *c*.

*b*. *Conditional gifts.*  The gift may be conditional upon the continuance or creation of a relation, and if conditional the donor is entitled to its return if the relation terminates or is not entered into.  The condition may be stated in specific words or it may be inferred from the circumstances.  Likewise, as in the case of engagement and wedding gifts, justice may require the creation of a condition although the donor had no such condition in mind.

*c*. *Wedding and engagement gifts.*  Gifts made in the hope that a marriage or contract of marriage will result are not recoverable, in the absence of fraud.  Gifts made in anticipation of marriage are not ordinarily expressed to be conditional and, although there is an engagement to marry, if the marriage fails to occur without the fault of the donee, normally the gift cannot be recovered.  If, however, the donee obtained the gift fraudulently or if the gift was made for a purpose which could be achieved only by the marriage, a donor who is not himself at fault is entitled to restitution if the marriage does not take place, even if the gift was of money.  If there is an engagement to marry and the donee, having received the gift without fraud, later wrongfully breaks the promise of marriage, the donor is entitled to restitution if the gift is an engagement ring, a family heirloom or other similar thing intimately connected with the marriage, but not if the gift is one of money intended to be used by the donee before the marriage.

Reporter's Notes<br>Comment *c*:

*   *   *

It is suggested that gifts of considerable size may be assumed to be conditional, that other gifts not involving peculiar features, such as heirlooms, and not for the primary purpose of being used

*(Footnote Continued Next Page)*

In this case, the trial court explains:

Here, most of the evidence presented about the parties' relationship was based on the parties' perceptions of the title transfer and their intentions toward each other. (**See generally** Master's Report Exhibit C, Master's Hearing Exhibits). Because these are credibility determinations, and because the Master was able to observe the parties, this court gave significant consideration to the Master's Report, which concluded that not enough credible information existed to find that the title transfer constituted a conditional gift. (**See id.** at 5; Stipulations/FOF, at Paragraphs 29-35). Furthermore, it is unclear as to: (1) whether a condition existed for the titled transfer; (2) whether the [Charter Club] Property was conditioned on marriage; or (3) whether the [Charter Club] Property was conditioned on refraining from "cheating" on [] Thierry.[a] (**See** N.T. Master's Hearing, 10/06/20, at 36-37, 70, 73, 119); (N.T. Master's Hearing, 10/14/20, at 269-70). Finally, the Deed itself did not contain any conditions, nor did [] Yamulla, a trained attorney with twenty-five years of experience, mention the existence of a condition to the lawyer who transferred the [Charter Club] Property title. (**See** N.T. Master's Hearing, 10/14/20, at 204-06, 267-68); (Stipulations/FOF, at Paragraphs 32-36). As such, this court agreed with the Master's conclusions that there was insufficient credible evidence of a conditional gift).

[a] The record reflects that both women had very different understandings as to what "cheating" consisted of: Ms. Thierry understood "cheating" to be Ms. Yamulla sleeping in the same house as Mr. Yamulla, and Ms. Yamulla understood "cheating" as being romantically involved with anyone other than Ms. Thierry. (**See** N.T. Master's Hearing, at 10/14/20, at 189-91; 230-33).

---

after marriage by the parties, should be regarded as absolute and should be incapable of recovery.

Restatement of Restitution § 58.

(Trial Ct. Op., at 13) (record citation formatting and edits provided; unnecessary capitalization omitted).

In this case, it is undisputed that the transfer of title was written by legal counsel hired by Yamulla, an attorney herself and present at the time of drafting, and that it did not contain any language that made the gift conditional. This is *prima facie* evidence that the title transfer was an absolute gift. **See Stanger**, **supra** at 199. Thierry and Yamulla offered conflicting testimony about the reason Yamulla transferred the Charter Club Property from herself alone to herself and Thierry as joint tenants with right of survivorship. Yamulla testified that she transferred the title on the condition that she and Thierry would get married or at least be in a relationship for the rest of their lives. (**See** N.T. Master's Hearing, 10/14/20, at 204-10). Thierry testified that the parties were estranged at the time of the transfer and that Yamulla had cheated again so Yamulla transferred the title to convince Thierry of her commitment. (**See** N.T. Master's Hearing, 10/06/20, at 21-22, 29-31). When asked if Yamulla told her that changing the Charter Club Property's title "was contingent on getting married," Thierry responded, "Absolutely not. … There was no condition." (**Id.** at 31).

Based on the foregoing, we discern no abuse of discretion by the Master and subsequent reliance on his Report by the trial court. In resolving the conflicting testimony, the Master was able to observe the demeanor of the parties and weigh the evidence. We decline Yamulla's invitation to re-weigh

it. The record supports the finding that the evidence was insufficient to prove a conditional gift where the writing's language was absolute and the evidence that the gift was conditional was not "clear, precise and indubitable." **Stengler**, **supra** at 200; **see also Lilly**, **supra** at 372. Hence, we conclude Yamulla's first claim does not merit relief.[9]

Moreover, we are not persuaded by Yamulla's reliance on **Nicholson v. Johnston**, 855 A.2d 97 (Pa. Super. 2004), and **McGoldrick v. Murphy**, 228 A.3d 272 (Pa. Super. 2020), in support of her position. The facts of those cases are distinguishable. Both cases involved the undisputed underlying facts that the couples lived together for approximately six years when they got engaged and decided to buy a marital home. In each case, one partner paid for the down payment on the home in furtherance of the transaction by agreement of the parties. After the other parties terminated the engagement, the properties were partitioned and the trial court found that the down payment monies were conditional gifts, which this Court affirmed, finding no abuse of discretion in the trial court's decision. **See McGoldrick**, **supra** at 279; **Nicholson**, **supra** at 102.

---

[9] We also note that the fact that Thierry terminated the relationship is not material to our review because there is no evidence that she fraudulently entered the relationship for the purpose of obtaining the gift. **See** Restatement of Restitution § 58.

- 17 -

In this case, the parties had a tumultuous approximate two-year relationship at the time of the transfer of title. The parties disagreed about the state of their relationship and the purpose of Yamulla's gift. Therefore, unlike in **Nicholson** and **McGoldrick**, the Master was tasked with weighing this conflicting testimony and found there was insufficient evidence of a conditional gift, and we must determine if the **denial** of a finding of a conditional gift was an abuse of discretion and if this case is factually and procedurally distinguishable.

Furthermore, we are not persuaded by Yamulla's reliance on the Reporter's Note to the Restatement to suggest that she was entitled to a presumption that because the transfer involved a gift of considerable size, it was conditional. The language of the Note is suggestive, not required. **See** Restatement-Restitution § 58, Reporter's Note ("It is **suggested** that gifts of considerable size **may** be assumed to be conditional[.]"). This argument is not persuasive.[10]

---

[10] Nor are we persuaded by Yamulla's argument that because Thierry testified to the destruction and loss of certain text messages and photographs, she is entitled to an inference that they would have evidenced an ongoing relationship, and that, because the Master failed to address the inference in his Report, this case must be remanded. (**See** Yamulla's Brief, at 48-49). She provides no law or pertinent discussion thereof in support of her claim that the Master was required to specifically include such inference in his Report and no evidence that he failed to consider it, particularly where Yamulla notes that he was aware of her entitlement to it. (**See id.** at 49 n.49); **see** Pa.R.A.P. 1924(a), (b); **In re Estate of Schumacher**, 133 A.3d 45, 51 (Pa. Super. 2016) ("This Court has repeatedly held that failure to develop an argument

*(Footnote Continued Next Page)*

**B.**

If it is not a conditional gift, Yamulla contends that it was error for the trial court not to award costs that she incurred against Thierry for acquisition, transfer, repair, maintenance, preservation and upkeep of the Charter Club Property.

Regarding acquisition costs, it is well-established that, "when title to real property is established as joint tenants with right of survivorship, neither party may receive reimbursement for acquisition costs in a subsequent action for partition." ***DeLoatch v. Murphy***, 535 A.2d 146, 150-51 (Pa. Super. 1987). Because it undisputed that Yamulla and Thierry had legal title to the Charter Club Property as joint tenants with the right of survivorship, Yamulla is not entitled to any acquisitions costs.

As to Yamulla's claim that she is entitled to a credit for expenses she incurred on the Charter Club Property, we observe that other than bald assertions that the evidence supported such recovery as a matter of equity, her brief contains no citation and discussion to support this claim. Neither does the argument section include any references to the record of where she

---

with citation to, and analysis of, relevant authority waives that issue on review.") (citation omitted). Therefore, this argument is waived. Moreover, there is no allegation that should we remand for the Master to expressly include such language, that it will affect the outcome of the proceeding in any way. We do not find her argument in this regard persuasive.

- 19 -

presented the evidence to support such costs. (**See** 49-51); **see** Pa.R.A.P. 2119(a)-(c); **Schumacher**, **supra** at 51. Therefore, it is waived.

Moreover, she would not be entitled to relief.

As a general rule, where a cotenant places improvements on the common property, equity will take this fact into consideration on partition and will in some way compensate him for such improvements, provided they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property.

**Bednar v. Bednar**, 688 A.2d 1200, 1205 (Pa. Super. 1997), *appeal denied*, 698 A.2d 63 (Pa. 1997) (citations omitted).

As the trial court observed:

In this case, Ms. Yamulla failed to present sufficient and again, credible, evidence that the expenditures she made on the Property were necessary to preserve and protect the integrity of the Property. First, most of Ms. Yamulla's evidence of repairs were scanned checks with a one or two-word description of what the check was for (*i.e.* "repairs" or "deadbolts"). (**See** Master's Report Exhibit D-22-25). Nothing more substantiating was introduced into the record.[b] Furthermore, Ms. Thierry consistently claimed that Ms. Yamulla's expenditures were overly expensive and unnecessary,[c] going so far as to say that Ms. Yamulla referred to these modifications as "decorating." (N.T. Master's Hearing, 10/06/20, at 39-40, 52-54). Again, in light of the insufficiency of credible evidence, this court agreed with the Master's conclusions that Ms. Yamulla was not entitled to any credits.

[b] Various invoices were introduced which demonstrated that Ms. Yamulla had undertaken various projects of interior design, but nothing was introduced to demonstrate that such projects were necessary.

[c] Ms. Thierry and Ms. Yamulla are both in agreement that the [Charter Club] Property was in good shape when Ms. Yamulla purchased it. (**See** N.T. Master's Hearing, 10/06/20, at 52-54, 179).

(Trial Ct. Op., at 14) (unnecessary capitalization omitted; record citation formatting provided; some record citations omitted).

Our independent review of the record confirms the trial court's characterization that the evidence did not establish that the improvements were a "necessary and substantial nature, materially enhancing the value of the [Charter Club Property]." ***Bednar***, ***supra*** at 1205. This claim lacks merit.

For all the foregoing reasons, we affirm the order of the trial court. ***See Lilly***, ***supra*** at 372.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2022